STATE

*vs.*

SMITH BUDGE

Penobscot.    Opinion May 10, 1927.

*Misadventure is no excuse only as to offenses that are malum in se.  In an act malum prohibitum misadventure may excuse.  If, however, the unlawful act was the proximate cause of the accident, misadventure will not be present, or if it can be said to be present, will not excuse.*

*Intoxication was always malum in se.  So driving an automobile while intoxicated involves an offense that is malum in se;  not so, driving while merely under the influence of liquor, but not intoxicated according to the ordinary use of that term.*

In the instant case the instruction of the court imposed a burden on the respondent that the law does not require. The burden is on the State to show death was due to either a reckless disregard of rights of others, or if it resulted while in performance of an unlawful act and involuntary, that the unlawful act was malum in se, or if malum prohibitum, that it was the proximate cause of the homicide.

Whether the unlawful act contributed to the accident, or the respondent was intoxicated are both questions of fact for the jury.

On exceptions. The respondent was indicted for manslaughter for having caused the death of Andrew Bickford at Lincoln on May

9th., 1925, by hitting him with his automobile while driving in the built-up portion of the town more than fifteen miles an hour. He was found guilty by a jury and sentenced to not less than three nor more than six years in prison.

Exceptions were taken by respondent to certain instructions given in the charge. Exceptions sustained.

The case appears fully in the opinion.

*Artemus Weatherbee, County Attorney,* for the State.

*William R. Pattangall and Benjamin W. Blanchard,* for the respondent.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BARNES, BASSETT, JJ., MORRILL, A.R.J.

WILSON, C. J. The respondent was indicted for the crime of manslaughter by reason of having caused the death of one Andrew Bickford by the improper operation of an automobile on the public highway.

On the evening of May 8th, 1925, several young men from the town of Lincoln attended a dance in the town of Howland, returning to their homes sometime after midnight in automobiles. The respondent with two friends and his fiancee, who lived near Howland, went to the dance and returned in the respondent's car. The deceased and a friend by name, Gleason, went to Howland in one automobile, and returned in another belonging to a young man living near the scene of the accident.

Bickford and Gleason lived beyond the home of the friend with whom they returned, and after arriving at his home left the automobile and started to walk along the road to their homes or boarding places. After leaving the automobile, as they entered the travelled way or shortly thereafter—there being no sidewalk or footpath beside the road at this point for pedestrians—Bickford was struck by the respondent's car and killed.

In his charge, the presiding justice correctly instructed the jury as to the essential elements of criminal negligence; and as to the law governing the operation of motor vehicles on the highways, both as to speed and their operation by any person under the influence of intoxicating liquor; but failed to instruct them as to the rules of law applicable to involuntary homicide resulting while a respondent was

engaged in some unlawful act, except as he defined what is termed in law misadventure.

In the course of his charge, after explaining to the jury the legal limit of speed in the built-up portions of a town, and in the open country, as established by the Legislature, and as to operating automobiles on the highways while intoxicated or under the influence of liquor, the presiding justice then gave the following instruction which is the ground of the respondent's exception:

"In order for you to acquit him of the charge of manslaughter by misadventure, you must find as a fact that he was not violating any one of those three rules of law at the time of the accident. That is a fact for you to determine. If he was doing an unlawful act at the time of the accident, then the principles of homicide by misadventure do not apply. If he was not doing an unlawful act, but was doing it in a criminally negligent manner such as I have explained to you under the principles of criminal negligence, then he would be guilty. If he was not performing a lawful act in a criminally negligent manner at the time of the accident, and was not violating any law at that time, then he was innocent, and your verdict should be not guilty."

We think the exception must be sustained. Not only was the instruction erroneous, but was couched in language that, under the circumstances of the case and in the light of other parts of the charge, might well tend to mislead the jury as to the essential elements of the offense necessary to be proved by the state, and thereby the respondent was aggrieved. *State* v. *Gallant,* 124 Me., 135.

The only inference the jury could have drawn from the instruction was that, if the respondent was engaged in an unlawful act at the time of the homicide, they must find him guilty. Not only was the respondent aggrieved in this respect, but the instruction put upon him a burden which the law does not impose. To acquit of manslaughter on the ground of misadventure, a jury is not obliged to find as a fact that a·respondent was not at the time of the homicide engaged in doing an unlawful act. If that was a controlling fact, no more is required than that the jury should have a reasonable doubt. The burden is not on a respondent to prove the homicide occurred by misadventure, but on the state to show it was either due to a reckless disregard of the safety of others, or that, if it resulted while in the performance of an unlawful act and involuntary, the unlawful

act was *malum in se,* or, if *malum prohibitum,* that it was at least the proximate cause of the homicide. *Com.* v. *Deitrick Applt,* 218 Pa., St., 36; *State* v. *McDaniel,* 68 So. Car., 304; *State* v. *Matheson,* 130 Iowa, 440; *State* v. *Cross,* 42 W. Va., 253.

It is urged, however, that the erroneous instruction was harmless because of other correct instructions. It is true there were in the beginning of the charge correct instructions as to the definition of criminal negligence and the burden of proof, but the same erroneous premise permeated the entire charge: that only misadventure renders a homicide excusable, and that there can be no misadventure when an unlawful act is present. The effect of all of which was virtually a direction to bring in a verdict of guilty, as it was admitted that the respondent was at least violating the law as to speed in the part of the town of Lincoln where the accident occurred.

At another point in the charge, the presiding justice, referring to misadventure, instructed the jury that to excuse the taking of human life under such circumstances or under such principles as had been explained, "there must be a concurrence of misfortune or misadventure in the performance of a lawful act, the exercise of due care and no intention to do harm. *The absence of any one of these will involve guilt".* The italics are ours to emphasize the impression that must have been left on the minds of the jury by the instruction excepted to, as to the effect of an unlawful act.

Homicides are either felonies, as murder or manslaughter, or excusable or justifiable. A homicide is justifiable if in self-defense, or by order of Court. It is excusable when unintentional and the result of accident or misadventure. A definition of misadventure is frequently found in the books, it is true, in the language given to the jury by the Court below, viz: a homicide occurring without negligence and while in the performance of a lawful act, a definition which has come down from the days of Hale and Blackstone; but as applied by them and their contemporaries the lawful act by reason of which misadventure would not excuse an involuntary homicide must be *malum in se.* Homicide committed while engaged in an act, *malum prohibitum,* might still be excused if the result of misadventure, the unlawful act not being the proximate cause of the homicide. Foster's Crown Laws, p. 259; Hale P. C. 39; *State* v. *Horton,* 139 N. Car. 588; *People* v. *Barnes,* 182 Mich., 179.

Bishop in his work on Criminal Law, vol. 1, sec. 331, says: "In these cases of unintended evil result, the intent whence the act accidentally sprang must probably be, if specific, to do a'thing which is *malum in se* and not merely *malum prohibitum*. .Thus Archibald says: 'When a man in the execution of one act by misfortune or chance and not designedly does another act for which, if he had wilfully committed it, he would be liable to be punished—in that case if the act he was doing were lawful or merely *malum prohibitum* he shall not be punished for the act arising from misfortune or chance, but if *malum in se*, it is otherwise' ". *State* v. *Horton, supra; Potter* v. *State*, 162 Ind., 213; *Dixon Applt.*, v. *State*, 104 Miss., 410; *State* v.. *Rawlings*, 191 N. Car. 265; *Com.* v. *Adams*, 114 Mass., 323.

In the last cited case the Court said: "It is true that one in the .pursuit of an unlawful act may sometimes be punished for another act done without design and by mistake, if the act done was one for which he could have been punished if done wilfully. But the act to be unlawful in this sense must be an act bad in itself, and done with an evil intent; and the law has always made the distinction, that if the act the party was doing was merely *malum prohibitum*, he shall not be punishable for the act arising from misfortune or mistake, but if *malum in se*, it is otherwise."

The same rule is laid down in *State* v. *Horton supra* with a fuller discussion of its history and application.

There is more or less seeming confusion in the cases owing to some being brought under statutes expressly declaring homicides resulting while committing a misdemeanor to be manslaughter, thus abolishing any distinction between *malum in se* and *malum prohibitum*. A statute of this nature exists in very many of the states, but where no such statute, as in this state, we think the rule is, that where involuntary homicide happens while engaged in an unlawful act, if the unlawful act is *malum in se*, misadventure does not excuse, and the offense is manslaughter; or if *malum prohibitum*, and the unlawful act is shown to be the proximate cause of the homicide, especially if the statute prohibiting was for the purpose of safeguarding human life or safety, misadventure will not excuse; otherwise, if no reckless conduct and the unlawful act in no way contributed to the injuries, as where a person driving an automobile seventeen or even twenty miles per hour, when the statutory limit was only fifteen miles per

hour, no other element of negligence being present, and the deceased unexpectedly stepped in front of the automobile without warning, and at a point in a street where pedestrians might not be expected to cross, and it could not be found that the excess of the legal limit of speed at which the automobile was being driven in any way contributed to the accident,—though the contributory negligence of the deceased is no defense in a criminal prosecution,—a homicide under such conditions can not be held to be more than a mere accident or misadventure. *Dunville* v. *State*, 188 Ind., 373, 379; *People* v. *Barnes*, *supra*, pp. 197-9. Whether or not the unlawful act contributed to or was the proximate cause of the homicide is always a question for the jury.

In the instant case the jury should also have been instructed as to the distinction, and its effect upon the respondent's guilt, as between driving while intoxicated, and driving while merely under the influence of liquor. In the first case, being intoxicated in the public streets was always an evil thing and prejudicial by its very nature to the interests of society as tending to breaches of the peace, as was *malum in se*, *People* v. *Townshend*, 214 Mich., 267; *State* v. *Brown*, 38 Kan., 390, 397. Hence driving a motor car while intoxicated must be also deemed to be an offense *per se*, and a homicide resulting thereby is not excusable on the ground of misadventure; but use of the streets while somewhat, or in the language of the statute, "at all" under the influence of liquor, but not intoxicated in the ordinary meaning of that term, was never regarded as a wrongful act until prohibited by statute, and hence is only *malum prohibitum*, and a homicide resulting under such conditions may be excusable on the ground of misadventure, in case the violation of the statute in no way contributed in the homicide. Whether or not the driver was in fact intoxicated is also a question for the jury. *State* v. *Kendall*, 200 Ia., 483, 489; *Cannon* v. *State* (Fla.) 107 So. 360.

The general instruction, therefore, that in order to acquit of manslaughter, it must be found as a fact that the respondent was not engaged in an unlawful act, could not fail to prejudice the respondent, unless, as it is now urged, no verdict but that of guilty could have been arrived at under correct instructions.

But we do not think in a case of this importance this Court should so hold, even though it may feel that such a verdict was justified by

the evidence.   By reason of the stress laid upon the importance of the doctrine of misadventure in the instructions of the presiding justice and the effects of an unlawful act, the jury may not have passed upon the real issues in determining the respondent's guilt, viz: whether he was conducting himself in such a reckless manner with such utter disregard of the safety of others as to be guilty of criminal negligence; or if engaged in an unlawful act and *malum prohibitum,* as it is admitted he was in respect to the speed at which he was driving, or if he was driving his car while under the influence of liquor,—if not intoxicated within the meaning of the statute,—whether the unlawful act was proximate cause of the homicide.   *Com.* v. *Guillemette,* 243 Mass., 346; *State* v. *Goldstone,* 144 Minn., 405; *People* v. *Glasebrook* 320 Ill., 567; *State* v. *McIvor,* 31 Del., 123; *State* v. *Disalvo,* 121, Atl. (Del.) 661; *Crisp* v. *State* (Ala.) 109 So 287; *Dunville* v. *State supra; Jackson* v. *State,* 101 Ohio St., 152; *People* v. *Barnes,* 182 Mich., 179; *People* v. *Townshend, supra; Com.* v. *Deitrick, supra.*

In the latter case the Court said:   "While we agree with the suggestion of the learned counsel for the Commonwealth that courts will not be astute to sustain technical objections in the trial of such cases when substantial justice has been accorded the defendant, it, however, has never been held that when clear error appears in the instructions to the jury upon the vital and controlling defenses set up, the appellate court can judicially say no harm was done the defendant."

And as the Court said in *People* v. *Gerdvine,* 210 N. Y., 184, 187; "An error which prevents proper consideration by the jury of the only question relied upon by the defendant is substantial not technical, and we have no right to disregard it, although we may approve of the verdict."

Nor was the error cured by any additional instructions given after exceptions to the objectionable portion of the charge were taken. The added instructions given, in no way clarified the situation.   They were merely confirmatory of the instructions already given as to whether Bickford came to his death "in some unjustifiable manner as I have already tried to explain to you."

*Exceptions sustained.*