### Commonwealth v. Lowans

*Karl E. Richards,* district attorney, and *E. Leroy Keen,* assistant district attorney, for Commonwealth.

*Walter H. Compton,* for defendant.

HARGEST, P. J., May 9, 1934.—The defendant was indicted for involuntary manslaughter. He entered a plea of nolo contendere. The testimony was such that the court cannot find him guilty of the negligent operation of the automobile, it appearing clearly that the deceased child, while rolling an inflated inner tube and running across the street, ran into the path of the automobile which was not proceeding at an unreasonable speed.

However, the defendant had no operator's license. Is it involuntary manslaughter where one operating a motor vehicle without an operator's license causes the death of another person, and the operation is without other negligence?

Section 79 of the Act of March 31, 1860, P. L. 382, as amended by the Act of April 11, 1929, P. L. 513, provides, in part:

"If any person shall be charged with involuntary manslaughter, happening in consequence of an unlawful act . . . such person, on conviction, shall be sentenced . . . ".

In 4 Bl. Com. (15 ed.) 192, distinguishing between excusable homicide and involuntary manslaughter, it is declared that the former "always happens in consequence of a lawful act, but this species of manslaughter [involuntary] in consequence of an unlawful one."

In Commonwealth v. Mayberry, 290 Pa. 195, 198, involuntary manslaughter is defined as follows:

". . . 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty' : 29 Corpus Juris, page 1148; Wharton on Homicide (3d ed.) section 211; Com. v. Micuso, 273 Pa. 474; Com. v. Gable, 7 S. & R. 423; 13 R.C.L. page 784."

This definition liberally construed, would include the operation of a motor vehicle by an unlicensed operator. But the statute provides that the act is involuntary manslaughter when "happening in consequence of an unlawful act". This is also Blackstone's definition. The precise question before us is whether the unlawful act must be the immediate or proximate cause of the death. There is no Pennsylvania appellate court case on this subject.

In Commonwealth v. Tole, 25 Dist. R. 957, the defendant was driving without a license and in an intoxicated condition, and he was held to be properly convicted. In that case, the intoxicated condition may have been the direct and proximate cause of the injury. There seems to be nothing in the case to indicate that the conviction would have been sustained if the element of intoxication had not been present.

In Commonwealth v. McCawley, 46 Pa. C. C. 306, and in Commonwealth v. Beamesderfer, 39 Lanc. 418, it is held that where the killing was done while the defendant was doing an unlawful act, though not the proximate cause, the offense was made out. In the McCawley case, the defendant accidentally shot a companion while hunting without having a license, and in the Beamesderfer case the defendant was operating an automobile with license plates on it that had been issued for another automobile. However, in the case of Commonwealth v. Smith, sess., 1933 no. 4, in this court, Judge Wickersham adjudged the defendant not guilty, on a plea of nolo contendere, without giving any reasons, the only evidence of illegality being the failure to have a license.

A criminal statute must be strictly construed. The essence of the crime of involuntary manslaughter, at least insofar as it emanates from an illegal act on the part of the person causing the death, is that it should be "in consequence of" the unlawful act. This very language would seem to indicate that the unlawful act should be the proximate cause of the killing. This seems to be the rule as laid down by the appellate courts of other States.

In Potter v. State, 162 Ind. 213, 64 L. R. A. 942, the defendant while illegally carrying a revolver in his pocket engaged in a friendly scuffle with one of his companions. The weapon was accidentally discharged from the pocket and the companion killed. It was held that such a violation of the law did not sustain the charge of involuntary manslaughter. The court said (p. 216) :

"It is undoubtedly true, as a general rule of law, that a person engaged in the commission of an unlawful act is legally responsible for all of the consequences which may naturally or necessarily flow or result from such unlawful act. But before this principle of law can have any application under the facts in the case at bar, it must appear that the homicide was the natural or necessary result of the act of appellant in carrying the revolver in violation of the statute.

"Section 2215 Burns 1901 prohibits, under penalty, any person from hunting

birds or other species of game with fire-arms on Sunday. If appellant, instead of carrying the pistol in question concealed, had been hunting with a weapon on Sunday in violation of the above statute, and when so hunting he had accidently discharged it and killed Garnett, who happened to be standing near by, could it, in reason, be asserted that his death was due to appellant's unlawful act of hunting on Sunday? . . .

"With equal reason and force it may be asserted that the mere fact that the accused was unlawfully carrying the weapon in question at the time it was accidentally discharged is not, under the circumstances, a material element in the case, for it is manifest that such unlawful act did not, during the scuffle between the parties, render the pistol any more liable to be discharged than though the carrying thereof had been lawful."

This case is directly in conflict with the case of Commonwealth v. McCawley, supra.

In Holder v. State, 152 Tenn. 390, 277 S. W. 900, there was also a pistol carried in the defendant's pocket and accidentally discharged. It was held that in the absence of handling the pistol in some reckless way, so that the shooting was the natural and probable result of such conduct, the offense of involuntary manslaughter was not made out.

In State v. Horton, 139 N. C. 588, 51 S. E. 945, the killing occured while the defendant was illegally hunting on another man's land. The court held that where there was no negligence and the act was not in itself dangerous, it being merely an offense malum prohibitum, a charge of involuntary manslaughter could not be sustained. See also State v. Whaley, 191 N. C. 387, 132 S. E. 6.

We think the correct rule is defined in State v. Budge, 126 Me. 223, 227, 137 Atl. 244, 246, wherein it is said:

"There is more or less seeming confusion in the cases owing to some being brought under statutes expressly declaring homicides resulting while committing a misdemeanor to be manslaughter. thus abolishing any distinction between *malum in se* and *malum prohibitum*. A statute of this nature exists in very many of the states, but where no such statute, as in this state, we think the rule is, that where involuntary homicide happens while engaged in an unlawful act, if the unlawful act is *malum in se*, misadventure does not excuse, and the offense is manslaughter; or if *malum prohibitum*, and the unlawful act is shown to be the proximate cause of the homicide, especially if the statute prohibiting was for the purpose of safeguarding human life or safety, misadventure will not excuse; otherwise, if no reckless conduct and the unlawful act in no way contributed to the injuries, as where a person driving an automobile seventeen or even twenty miles per hour, when the statutory limit was only fifteen miles per hour, no other element of negligence being present, and the deceased unexpectedly stepped in front of the automobile without warning, and at a point in a street where pedestrians might not be expected to cross, and it could not be found that the excess of the legal limit of speed at which the automobile was being driven in any way contributed to the accident,—though the contributory negligence of the deceased is no defense in a criminal prosecution,—a homicide under such conditions can not be held to be more than a mere accident or misadventure."

For these reasons we are of opinion that, in the absence of negligence, the failure to have a license is not of itself such a violation of the law as will sustain an indictment for involuntary manslaughter.

Now, May 9, 1934, the defendant is hereby adjudged not guilty.

From Homer L. Kreider, Harrisburg, Pa.