## Commonwealth v. Romig

*John P. Wanner,* district attorney, and *Bertram J. Murphy,* assistant district attorney, for Commonwealth.

*John A. Rieser* and *Llewellyn R. Bingaman,* for defendant.

SCHAEFFER, P. J., August 24, 1934.—Upon the trial of the defendant for involuntary manslaughter, the Commonwealth proved that defendant, at the time in question, was operating an automobile without a driver's license when the car, having run off the road, upset one of its passengers, who as a result thereof died immediately. There was testimony to the effect that the accident occurred about 8:30 p. m. on the evening of December 8, 1933, when it was dark, at the beginning of an S curve upon an upgrade. According to the marks upon the ground, defendant's car failed to make the turn, ran against the bank at the side of the road, and rolled over its top, pinning the decedent beneath it. The defendant, offering no testimony, demurred to the evidence. The court thereupon adjudged the defendant guilty. This action is now before us for review upon a motion in arrest of judgment, which here must be treated as a motion for a new trial. For the issue before us is whether the evidence is sufficient to sustain a conviction. The demurrer to the evidence of the Commonwealth admits all the facts which the evidence tends to prove and all inferences reasonable deducible therefrom: Commonwealth v. Williams, 71 Pa. Superior Ct. 311.

The Commonwealth contends that, irrespective of the question of negligence, the defendant is guilty for the reason that, as he was without a driver's license, he in driving the car was guilty of an unlawful act in consequence of which the death resulted. On the other hand the defendant, relying upon the decision of the Dauphin County court in Commonwealth v. Lowans, 39 Dauph. 66, 69, contends that . . . "in the absence of negligence, the failure to have a license is not

of itself such a violation of the law as will sustain an indictment for involuntary manslaughter."

We shall first consider this branch of the case. We have no complete statutory definition of manslaughter, voluntary or involuntary. But both have been well defined in the cases. "Involuntary manslaughter consists in 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty': 29 Corpus Juris, page 1148; Wharton on Homicide (3d ed.) section 211; Com. v. Micuso, 273 Pa. 474; Com. v. Gable, 7 S. & R. 422; 13 R. C. L. 784": Commonwealth v. Mayberry, 290 Pa. 195, 198.

Section 79 of the Act of March 31, 1860, P. L. 382, as amended by the Act of April 11, 1929, P. L. 513, refers to but one of these forms of involuntary manslaughter—that resulting from doing some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm. It provides: "If any person shall be charged with involuntary manslaughter, *happening in consequence of an unlawful act*, it shall and may be lawful for the district attorney . . . to waive the felony and to proceed against and charge such person with a misdemeanor. . . ." This is a reënactment of section 8 of the Act of April 22, 1794, 3 Sm. L. 186. As was pointed out in considering this act by Chief Justice Tilghman in Commonwealth v. Gable, 7 S. & R. 423, 434, it is unnecessary that the act which results in death be directed against the person of the party slain; it is enough if such act be unlawful. If the act was intended to be aimed at the deceased, the offense would be voluntary instead of involuntary manslaughter. "As a phrase 'in consequence of' is defined in the Standard Dictionary 'as the result of'." Commonwealth v. McCawley, '46 Pa. C. C. 306, 313.

It seems clear to us that in the case before us the deceased came to his death as the result of the defendant's driving of the automobile and that the latter act, being unlawful, renders the defendant guilty of involuntary manslaughter. The death was the direct result of defendant's driving. The unlawful act was the driving of the automobile, not the failure to obtain a license.

Blackstone in his Commentaries, book IV, p. 192, gives an example of involuntary manslaughter *happening in consequence of an unlawful act*: "As, if two persons play at sword and buckler, unless by the king's command, and one of them kills the other, this is manslaughter, because the original act was unlawful. . . ." So in Commonwealth v. Gable, supra, Tilghman, C. J., says (p. 428) : ". . . involuntary manslaughter is where it plainly appears that neither death nor any great bodily harm was intended, but death is accidently caused by some unlawful act, or an act not strictly lawful [unlawful?] in itself, but done in an unlawful manner and without due caution. This doctrine is exemplified in the cases put, in 4 *Black* 192 and 1 *Hale* 472, 473; such as, where two men are playing at an unlawful game, and one of them, unintentionally kills the other; or, where a workman throws down a stone or piece of timber into the street of a populous city, even though he calls out to give warning; or, where one is hunting in the park of another, without license, and his arrow, glancing from a tree, kills another. In all these cases, it is evident, that neither death, nor bodily harm of any kind were intended, yet the acts being either unlawful of themselves, or not done with sufficient caution, they are held to be cases of manslaughter." In the note upon homicide in Thomas' edition of 3 Coke's Institute, 545, it is said: "A tournament, boxing, &c., are unlawful acts, and if death

ensues in consequence, the slayer is guilty of manslaughter and not misadventure only. 1 Hawk. P. C. 74, 1 Hal. P. C. 472."

In our opinion, the decision in Commonwealth v. Lowans, supra, fails to give effect to the portion of the definition of involuntary manslaughter which declares it to be the killing of another without malice and unintentionally, resulting from the doing of some unlawful act not amounting to a felony and not tending to cause death or great bodily harm. Cases of manslaughter arising from negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty are today commonplace. Such are the ordinary prosecutions for manslaughter against operators of motor vehicles. But examples of cases of manslaughter arising from the doing of an unlawful act, although far less common, are to be found. Thus in Commonwealth v. Ernesto et al., 93 Pa. Superior Ct. 339, and in Commonwealth v. Mango et al., 101 Pa. Superior Ct. 385, the defendants were held to be gulity of involuntary manslaughter because they had been, in violation of the liquor laws, operating a still, the explosion of which resulted in the death of several people. In Commonwealth v. McCawley, 46 Pa. C. C. 306, a death resulting from hunting without a license was held to be involuntary manslaughter and in Commonwealth v. Beamesderfer, 39 Lanc. 418, a death resulting from operating an automobile unlawfully, in that the license plates on the car had been issued for another automobile, was held to constitute the offense. In Commonwealth v. Ochs, 91 Pa. Superior Ct. 528, driving upon the left at an intersection at a speed of 35 to 40 miles an hour was similarly held to be an unlawful act such as rendered the defendant guilty of the offense.

The defendant contends, upon the authority of State v. Budge, 126 Me. 223, 137 Atl. 244, relied upon in Commonwealth v. Lowans, supra, that the unlawful act, before it will raise an ensuing death from misadventure to manslaughter, must be shown to be malum in se and not merely malum prohibitum, unless the unlawful act is also shown to be the proximate cause of the homicide. See also Jackson v. State, 101 Ohio 152, 127 N. E. 870, and People v. Barnes, 182 Mich. 179, 148 N. W. 400. But we can see no purpose in further complicating the law by introduction of the distinction between acts malum in se and acts malum prohibitum in this class of cases; we agree that if the death does not happen "in consequence of" the unlawful act, that is, is not directly caused by the act so that the latter can be said to be the proximate cause of the former, the happening amounts to no more than misadventure. Thus, if a person be in the illegal possession of a drug but has not used any part of it so as to be under the influence thereof, and without any negligence or the violation of any statutory or common-law duty owed to others, runs over another and kills him, such driver cannot be held guilty of manslaughter for the reason that the death did not happen in consequence of such unlawful act. There would be no causal relationship between the illegal act and the death. But in our case the driving was the illegal act and caused the death.

But even if the defendant had had a proper license at the time and his act of driving had therefore been lawful, we are of opinion that the record discloses facts which are amply sufficient to convict the defendant of involuntary manslaughter, in that he drove so negligently as to produce the death of the decedent.

As it was dark and later than one hour after sunset, he was bound to have his car equipped with two lighted headlamps (Act of May 1, 1929, P. L. 905,

sec. 801, 75 PS §351), sufficient to produce a driving light sufficient to render clearly discernible all vehicles, persons, or substantial objects 160 feet ahead (sec. 803, 75 PS §353). He was bound to drive at a careful and prudent speed, having due regard to the traffic, surface and width of the highway, and of any other conditions then and there existing, and not at a speed which would endanger the life, limb, or property of any person (sec. 1002, 75 PS §501). It was his duty to have such headlights as would enable him to see in advance the face of the highway, and to discover obstacles in his path in time for the safety of those riding in his car and of himself, and to keep his car under such control as to enable him to stop and avoid obstructions which fell within his vision and within the range of his lights: Cormican et al. v. Menke et al., 306 Pa. 156, 160. "It is the duty of the driver of a car, driving on a dangerous highway on a dark, stormy night, to have his car under such control that he may stop or turn it away when objects intercepting his passage come within range of the rays of light from his lamps. If he drives so fast that he cannot avoid what ordinary prudence would make a known obstruction, he is guilty of negligence": McGrath v. Pa. R. R. Co., 71 Pa. Superior Ct. 1, 3. It was his duty to look ahead, and to see what was visible: Byrne et al. v. Schultz, 306 Pa. 427, 433. From the testimony, the inference is clear and inescapable that the defendant failed to make the turn, ran against the embankment at the side of the road, and thus caused the car to upset. In so doing, one of the following conclusions is inevitable: Either he was not looking ahead at the time, or he was traveling at a rate of speed which rendered it impossible for him to stop or to turn or to control the situation for safety within the distance disclosed by his headlights, or he drove recklessly and without regard for the safety of the occupants of his car. Under any of these, coupled with the fact of death resulting from the overturning of the car, he was guilty of involuntary manslaughter. The negligence in the performance of a lawful act, required to make out the charge of involuntary manslaughter, is the absence of due care under the circumstances—an act done in an unlawful manner and without due caution. It is not necessary that the act be reckless or wanton: Commonwealth v. Ochs, 91 Pa. Superior Ct. 528.

And now, to wit, August 24, 1934, the rule to show cause is discharged.