**STATE of Maine**

**v.**

**Michael A. LEONARD et al.**

Supreme Judicial Court of Maine.

Sept. 30, 1976.

Foahd J. Saliem, John Atwood, Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Fitzgerald, Donovan & Conley, P. A., by J. Michel Conley, III, Bath, for Erroll M. Pinkham, Jr.

Aldred, Ames & Moncure by Richard C. Ames, Brunswick, for Michael A. Leonard.

Hart & Stinson, P. A., by Carl W. Stinson, Ronald W. Lupton, Bath, for Jeffrey Pye.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

The Oxford County grand jury indicted Erroll Pinkham, Jr., Michael Leonard and Jeffrey Pye for the common law offense of manslaughter. 17 M.R.S.A. § 2551.[1] The three indictments were consolidated, jury trial waived by each defendant, and a single Justice of the Superior Court made a finding of guilt with reference to each defendant. Appeals were seasonably filed.

We deny each of these appeals.

The Justice below made the following findings of fact:

"On September 13, 1974, in Norway, on a rainy evening, a football game was

---

* Mr. Justice Weatherbee sat at argument and participated in consultation but died prior to preparation of opinion.

1. "Whoever unlawfully kills a human being in the heat of passion, on sudden provocation, without express or implied malice aforethought . . . *or commits manslaughter as defined by the common law*, shall be punished . . . ." (Emphasis supplied.)

in progress between Morse High School, Bath, and Oxford Mills [sic], Norway. It was evidentially apparent that rivalry between the two created unusual tensions. A fence and gate were between the football stands and the parking lot. Just before the first half ended, a rumbling inside the gate occurred which resulted in an angry gathering in front of the exit gate. Two voices were heard. One said 'Let's fight.' The other one apparently was from a police officer who said 'If you want to fight, go into the parking lot.' Whereupon some two hundred people did in fact go through the gate into the parking lot. It is clear from the evidence that at least thirty to forty individuals went into the parking lot with the intention to fight. And they did fight. In fact the evidence discloses that between thirty and forty individuals were hitting each other at random.

The deceased, Kimball, was among those who went through the gate. There was some evidence that he was not 'a fighting man.'

As it turned out and I so find, he suffered injuries at this scene which resulted in his death two days later.

This Court (Jury waived) is now called upon to decide whether or not one or more of the named defendants is guilty of manslaughter or any lesser offense.

There were many witnesses, but only two in the opinion of this Court, were in a position to tell it the way it really was. One must concede that the entire fracas occurred in what might be termed semi-darkness. Nevertheless, there were these two young women witnesses who were at the best vantage point to see what really happened. I believe their

testimony. They testified that defendant, Pinkham ran toward the deceased Kimball and hit him one hard blow on the side of his head that knocked him 'off his feet.' They further testified that after this blow which draped him over the back of a Volkswagon, the other two defendants, Jeffery Pye and Michael Leonard, pounded him with their fists 'in the upper part of his body' each hitting him twice. . . . [T]his Court finds the testimony of the two girls completely worthy of belief . . . ."

The record supports the conclusion that the decedent died from bronchopneumonitis which developed because of intracranial brain damage produced by a subarachnoid hemorrhage which, in turn, was traumatic in origin.

Each of the appellants attack the result announced by the Justice below from essentially the same basic positions.

 It is first contended that the findings of fact are contrary to the evidence, thus premising the conclusion of guilt on nonexistent facts. It is true that the Justice attributed certain facts to the testimony of two young ladies which did not specifically originate from their testimony. However, our review of the record supports the conclusion that the two witnesses both testified that defendant Pinkham struck the decedent one blow and that the other two defendants subsequently each struck him at least twice. It is likewise true that there was no evidence of any other person being involved in an assault upon the decedent.[2]

In short, although the Justice may have erroneously attributed some incidental facts to the testimony of the young ladies, his reliance on the fundamental part of

2. Immediately after receiving the last blows which were delivered while decedent was apparently helpless, he lapsed into unconsciousness, was taken to a local hospital for emergency treatment and thence to the Central Maine Medical Center where, despite the efforts of a neurosurgeon, he died two days later.

their testimony is fully supported by the record and we find no basis for either reversing the convictions or granting a new trial on that ground.

Appellants separately argue that the evidence failed to prove that the particular act ascribed to each defendant was a cause of the decedent's demise and since there is no suggestion that the three defendants were co-conspirators or acting in concert with each other, the State has failed to prove an essential element of the crime of manslaughter.

█ It is inherent in the findings of the Justice below that each defendant committed an assault and battery on the decedent. It is general law that if death results from an unlawful although nonmalicious assault and battery, the crime is manslaughter even though death was neither intended nor likely to result from the precise nature of the assault and battery. *State v. Kinard,* 245 S.W.2d 890 (Mo. 1952); *see also State v. Watson,* 364 S.W.2d 519 (Mo. 1963); *Commonwealth v. Sostilio,* 89 N. E.2d 510 (Mass. 1949).

Thus, the precise question to be resolved is whether there was a causal relationship established between the acts of the three defendants and the death of Mr. Kimball. In his findings hereinbefore quoted the Justice stated:

"As it turned out and I so find, he suffered injuries at this scene which resulted in his death two days later."

Additionally, the Justice below stated,

"I rule that the assault and battery committed by all three defendants upon the deceased, Kimball, was at least malum prohibitum and played a substantial part in bringing about his death. In legal terms the five blows, in multiple succession within a period of one minute or less were the 'proximate cause' of his death. . . ."

We do not feel it is necessary on the facts of this case to discuss the concept of manslaughter enunciated in *State v. Budge,* 126 Me. 223, 225–26, 137 A. 244, 245–46 (1927), namely:

"The burden is not on a respondent to prove the homicide occurred by misadventure, but on the state to show it was either due to a reckless disregard of the safety of others, or that, if it resulted while in the performance of an unlawful act and involuntary, the unlawful act was *malum in se,* or, if *malum prohibitum,* that it was at least the proximate cause of the homicide. . . ."

*See State v. Northup,* 318 A.2d 489 (Me. 1974); *State v. London,* 156 Me. 123, 162 A.2d 150 (1960).

█ It is thus unnecessary to discuss the appellant's argument that a causal relationship must exist even if the acts charged were malum in se. It would seem axiomatic that if criminal conduct was malum in se and was the proximate cause of a homicide, the crime would be classified minimally as manslaughter.

█ The extended medical testimony completely supports the inference of causation which was drawn by the Justice below. We can adopt the language of the Illinois Court, namely:

"The determination of whether there was a causal relationship between the defendants' conduct and the decedent's death is a matter properly left to the trier of fact. . . . ." A judge sitting without a jury, may weigh the evidence and is not required to disregard the natural inferences that flow from the evidence heard. . . ."

*People v. Dillon,* 28 Ill.App.3d 11, 18, 327 N.E.2d 225, 230–31 (1975).

Having thus determined that the Justice below correctly ruled on the issue of causation, we need discuss no further the vari-

ous arguments on this point advanced by the individual defendants.[3]

We have also considered the other grounds advanced by the defendants in support of their appeal and find them to be without merit and of insufficient gravity to warrant further discussion.

The entry is:

Appeals denied.

All Justices concurring.

---

3. We note that the new Criminal Code, effective May 1, 1976, is entirely consistent with this position. 17–A M.R.S.A. § 56 provides:
"Unless otherwise provided, when causing a result is an element of a crime, causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient."
See *Summers v. Tice*, 33 Cal.2d 80, 199 P. 2d 1 (1948) ; *State v. Newberg*, 129 Or. 564, 278 P. 568 (1929).