STATE of Maine

v.

Robert PRAY.

Supreme Judicial Court of Maine.

Oct. 31, 1977.

Charles K. Leadbetter, Asst. Atty. Gen., Augusta, for plaintiff.

Peter P. Sulides, Rockland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

Robert Pray was convicted of manslaughter in the killing of Ralph Everett, Jr. The essential facts presented to the jury are these:

On October 3, 1975, Robert Pray, his friend, Joan, and her brother, James Heald, later the State's primary witness, went to the Oasis Bar in Rockland. Ralph Everett was also there. During the evening both Pray and Everett became intoxicated and Everett twice fell down in the bar and landed on the back of his head.

Later that evening, James Heald and Robert Pray went outside and were standing on the porch of the Oasis when a car drove up and Everett got out. Everett came up the steps of the porch and, disregarding Heald's suggestion that he go home, walked straight at Robert Pray with his arms at his sides. Robert Pray testified

that he was "scared" of Everett and knew that he "could be violent." Heald testified that Everett's appearance showed that there was going to be trouble. As Everett came close to Pray, Pray struck him against his chest with his left forearm. Everett staggered backward, fell off the porch and struck the back of his head on the pavement. He died of a fractured skull.

At the trial, the defense argued that earlier falls might have caused the fracture and that Pray acted in self-defense. The State sought and received jury instructions on the theories of voluntary manslaughter, criminally reckless involuntary manslaughter, and involuntary manslaughter as a result of death resulting from an unlawful act, namely, Robert Pray's striking of Everett with his forearm. The jury's verdict of guilty could have been founded on any one of those theories, including the theory of manslaughter resulting from an unlawful act.

Since the common law concept of involuntary manslaughter resulting from an unlawful act can no longer be regarded as based on sound principles of criminal law and has not been incorporated in the new Maine Criminal Code, the doctrine should no longer be applied to sustain homicide convictions. The appeal is sustained and the case remanded for a new trial.

At the time Robert Pray allegedly killed Ralph Everett, manslaughter as defined in 17 M.R.S.A. § 2551 (1964) included certain intentional killings without malice aforethought and "manslaughter as defined by the common law." Thus, the legislature delegated the task of defining involuntary manslaughter to the courts. In *State v. Budge*, 126 Me. 223, 137 A. 244 (1927), this Court announced a traditional common-law

definition of involuntary manslaughter under which a person is guilty of involuntary manslaughter if an unintended homicide that is neither excused nor justified results either from conduct on the part of the defendant demonstrating reckless disregard for the safety of others or from an unlawful act.[1] To clarify the rules governing involuntary unlawful-act manslaughter, the court in *Budge* differentiated conduct unlawful only because prohibited by statute ("*malum prohibitum*") from conduct unlawful because "wrong in itself" ("*malum in se*"). Under the *Budge* analysis, the conduct of a person who commits an offense that is *malum prohibitum* must be separated into its lawful and unlawful aspects. Then inquiry must be made as to whether the prohibited aspect of the conduct is causally related to the victim's death. Referring to the case where a causal relation is absent, the court said, ". . . a homicide under such conditions can not be held to be more than a mere accident or misadventure." *State v. Budge*, 126 Me. 223, 228, 137 A. 244, 247 (1927). As to conduct "*malum in se*", the court indicated that because unlawfulness inheres in the entirety of the conduct the only inquiry is whether that conduct had a but-for causal relation to the victim's death.

The net effect of the rules set forth in *Budge* is to permit an unlawful act, whether *malum prohibitum* or *malum in se*, to be the basis of a conviction of involuntary manslaughter even when defendant's conduct in the particular circumstances may have created no perceptible risk of death.

In the present case the jury was instructed in accordance with the *Budge* rules. However, since the common law rules of

---

1. This Court reversed a judgment of conviction in *Budge* on the ground that the trial judge's instructions left it possible for the jury to find defendant guilty of manslaughter merely because defendant was engaged in conduct that was "*malum prohibitum*", without need for the jury to undertake the further inquiry whether that part of defendant's conduct to which unlawfulness attached was causally related to the victim's death. Although, technically speaking, the rule in question in the instant case may

have been dictum in *Budge*, not being wholly necessary as a ground for reversal of the conviction, it was dictum important for the proper disposition of the case on retrial. The rules announced in *Budge* have been reannounced by us without apparent disapproval as recently as 1974 in *State v. Northup*, 318 A.2d 489, 497 (Me.1974), but not in any context where the particular sort of application here in question was crucial to the decision.

*Budge* are judge-made rules around which no important reliance interests have developed, they should not be applied when it has become apparent that they are no longer consonant with sound principles of criminal law.

■ Unlawful-act involuntary manslaughter has been severely criticized. J. Hall, General Principles of Criminal Law 258–260 (2d ed. 1960); LaFave & Scott, Criminal Law 602 (1972); I. Wilner, Unintentional Homicide in the Commission of an Unlawful Act, 87 U.Pa.L.Rev. 811 (1939). The flaw in the concept is that a person may be convicted of unlawful-act manslaughter even though the person's conduct does not create a perceptible risk of death. Thus, a person is punished for the fortuitous result, the death, although the jury never has to determine whether the person was at fault with respect to the death. The concept violates the important principle that a person's criminal liability for an act should be proportioned to his or her moral culpability for that act. The wrongdoer should be punished for the unlawful act and for homicide if he or she is at fault with respect to the death, but should not be punished for a fortuitous result merely because the act was unlawful.

■ The Model Penal Code abolishes the concept of unlawful-act manslaughter, and the modern trend in state homicide law is to follow this lead. Model Penal Code § 210.3 and Comments to Tent. Draft No. 9, § 201.3 (1959); LaFave & Scott, Criminal Law 602 (1972). *See, e. g.,* Conn.Gen.Stat.Ann. § 53a–56 (1972); N.Y. Penal Law (McKinney) § 125.15 (1975); Wis.Stat.Ann. § 940.06 (1958). Under the modern view, unlawful acts which result in death are punished as homicide only when the acts involve a perceptible risk of death. Maine's new criminal code abolishes unlawful-act manslaughter and substitutes several types of reckless and negligent homicide. 17–A M.R.S.A. §§ 10, 204, 205 (1976). This change represents legislative rejection of common law unlawful-act manslaughter and adoption of a homicide punishment scheme which makes the penalty commensurate with the defendant's culpability.

The rule in question is, of course, analogous to the so-called "felony murder rule." In applying that rule even before adoption of the new Criminal Code this court had come to the position of requiring not merely a causal relationship between the felony being committed or attempted and the death, but also "proof beyond a reasonable doubt that the manner or method of its commission, or attempted commission, presents a serious threat to human life or is likely to cause serious bodily harm." *State v. Wallace,* 333 A.2d 72, 81 (Me.1975). We see no reason for not importing a similar requisite of perceptibility of risk of death or serious bodily harm as an element of unlawful-act involuntary manslaughter.

■ Unlawful-act manslaughter, as a product of judge-made law, is subject to responsible judicial modification. The concept is not based on sound principles of criminal law and has now been abolished by the legislature. Under these circumstances it would be unjust to apply the doctrine to sustain the homicide conviction of Robert Pray.

The appeal is sustained and the case remanded for new trial.

The entry is:

Appeal sustained.

Remanded for new trial.

All Justices concur.

ARCHIBALD, J., did not sit.

DUFRESNE, Active Retired Justice, sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.