ISRAEL I. BERLIN *v.* BALTIMORE COUNTY
BANK ET AL.

[No. 1, October Term, 1934.]

*Decided October 31st, 1934.*

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William H. Lawrence and John D. C. Duncan,* for the appellant.

*Elmer R. Haile* and *Milton R. Smith,* for the appellees.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellees against the Empire Furniture Manufacturing Company, a body corporate, and Israel I. Berlin. The bill alleged that on November 7th, 1932, the Empire Furniture Manufacturing Company, being indebted unto the appellees on demand notes for $15,800 and $7,460, respectively, gave a joint mortgage to said banks as collateral security, for the payment of said notes, principal and interest, when and as due and demanded, which said mortgage was duly recorded; that said mortgage was a first mortgage, and covered certain real estate in Baltimore County, together with the buildings and improvements thereon, and also all the tools, machinery, equipment, appliances, and fixtures thereon, constituting a part of the furniture manufacturing plant of the mortgagor;

that on the same day said mortgagor executed a second mortgage on said real estate to Belle C. Kleiman, Benjamin Kleiman, and David Kleiman, trustees, to secure an indebtedness of $10,500 one year after date, with interest; that in said mortgage to plaintiffs the mortgagor covenanted to insure, and to keep insured, the improvements and personal property on the mortgaged land to the amount of at least $25,000, for the benefit of the plaintiff mortgagees, to the extent of their liens or claims; that, in pursuance of said insurance clause, the said manufacturing company obtained policies of insurance in the aggregate amount of $45,000, each of the policies being made payable to the plaintiffs "as interest may appear," and, after the debt and interest secured by the first mortgage should be fully satisfied, remaining loss, if any, should be payable to the second mortgagees, "as interest may appear"; and that all of said policies were delivered by the mortgagor to the Baltimore County Bank, one of the plaintiffs; that on April 29th, 1933, the buildings and contents on said mortgaged property were destroyed by fire, and the defendant Israel I. Berlin, acting in behalf of the mortgagor and the first and second mortgagees, negotiated an adjustment of said fire loss, and in August 1933, checks or drafts in the aggregate amount of $41,250 were received by the said Berlin from the insurance companies in settlement of said loss; that said checks or drafts were drawn payable to the joint order of the mortgagor and first and second mortgagees, and, in order to facilitate the collection of said checks or drafts, the said Berlin had them indorsed by the several parties in interest and delivered to the National Bank of Cockeysville, one of the plaintiff mortgagees, with the request that they be collected and the money deposited in a special account in the joint names of the plaintiffs and mortgagor, stating that, after all the insurance money had been so collected and deposited, he would join in signing necessary checks against said special account to pay in full the mortgage claim of plaintiffs; that said Berlin was then, and is now, the executive vice-president of said

furniture company, and he also acted in behalf of the Kleiman trustees, second mortgagees, stating that they were members of his family; that, after all said checks or drafts had been collected and deposited, the said Berlin was requested by plaintiffs to join in the signature of checks against the funds so deposited, to satisfy and pay the respective mortgage claims of plaintiffs, as he had previously promised to do, but he refused to join in the signing of such checks, on the ground that the mortgagor is indebted unto divers other unsecured creditors, including a claim of his own for $2,847.51, and has insisted as a condition precedent to his signing of any checks against said funds that plaintiffs waive or give up a certain percentage of their preferred claims in order that he might make distribution of said funds to all the creditors of said mortgagor, secured and unsecured, on a *pro rata* basis; that plaintiffs have no adequate remedy at law and will suffer irreparable loss and injury unless their respective mortgage claims are paid out of said insurance fund. The prayer of the bill is for a mandatory injunction to require the said manufacturing company, through Israel I. Berlin, its vice-president, to forthwith join in the signing of proper checks against the insurance money so deposited to plaintiffs for the amounts of their respective mortgage claims; and for general relief. A show cause order was passed, and the defendants filed answers.

Berlin in his answer alleges that the plaintiff came to him through the cashier of the Baltimore County Bank, and Elmer R. Haile, a member of the board of directors and counsel of said bank, and Milton Brooks, cashier of the National Bank of Cockeysville, and explained to him the situation of said banks to be as follows, viz.: They held unsecured claims against the said defendant company; that it was a defunct concern; that the Cruikshank Company held a secured claim against said defendant company for more than $1,200; that Belle C. Kleiman and others held a secured claim against said defendant company for more than $10,000. The answer further alleges that plaintiffs requested Berlin to permit two

shares of stock of the defendant company to be placed in his name, and that he accept the office of executive vice-president of said company in order that he might be able to take care of and secure the interests of plaintiffs; that, when he agreed to look after the interests of plaintiffs, a transfer of two shares of stock and properly executed minutes to be entered on the books of the company were prepared by the representatives of plaintiffs; that he was then delegated by the plaintiffs to confer with the Cruikshank Company, which he did over a long period of time, making four trips to New York, and succeeded finally in disposing of the lien of the Cruikshank Company with a savings to the plaintiffs of $9,000; that he was also requested by plaintiffs to intercede for them in an effort to procure for them a first mortgage against the property of the defendant company, postponing the lien of the Kleiman trustees to the liens of plaintiffs, which he succeeded in doing, the said Kleiman trustees accepting a second mortgage; that, during all the negotiations with this defendant, he, as well as plaintiffs, knew that the defendant company had no funds and no ability to pay for anything; that at the request of plaintiffs, and acting for them, he kept and maintained adequate insurance for a sufficient amount to cover the liens against the defendant company, and in order to do so, it was necessary that watchmen be kept and maintained at the plant, and that fire be kept in the boilers, which necessitated the use of coal, and that the sprinkler system had to be kept in repair; that, acting for plaintiffs, the defendant kept watchmen at the plant and kept the sprinkler system in repair and delivered from his own coal yards all the necessary coal; that all of these things were done for and on behalf of and in the interest of plaintiffs, and the cost and expense thereof amounted to more than $5,000; that this defendant's only reason for not joining in the withdrawal of the insurance funds is that he is advised that in equity and justice plaintiffs should pay for the maintenance and upkeep of the sprinkler system and the salaries of watchmen necessary for the maintenance of proper

insurance, because these things were done for and at the request of plaintiffs, and, had they not requested and ordered this defendant to make these outlays, the insurance would not have been maintained and the mortgage of plaintiffs would have been foreclosed long since, because the defendant had no funds with which to pay these expenses.

The answer of the defendant company alleged that, for some time prior to the election of Berlin as vice-president, it has not functioned as a corporate body except through the officers' instructions, advice, counselship, and attorneys of the plaintiffs; that everything done in the name of this defendant during said time was done through plaintiffs and their attorneys and in their sole interests; that, until the controversy resulting in this suit, Berlin, the sole representative of this defendant, has worked only for the interest of plaintiffs, and has been advised by them and their attorneys; and further says that this defendant therefore neither admits nor denies any of the matters and facts set forth in the bill, but calls for strict proof thereof.

After the taking of testimony in open court, the chancellor decreed that the writ of injunction be issued as prayed. From this decree, the defendant Israel I. Berlin alone appealed.

The evidence does not support the allegations of the appellant that he accepted his position as executive vice-president of the furniture company at the request of appellees, or that he was acting as their agent or solicitor in their behalf in the expenditures he claimed to have made in connection with the requirements of the insurance company. It is apparent, we think, from the testimony, that he was acting as the executive officer of the company in the interest of the owner of the property, and doing what was necessary for its protection and what it was his duty to do under the covenants in its mortgages. As between the first and second mortgages, if there is any shortage, of course, it must be suffered by the inferior lien claim.

It follows that in our opinion the chancellor was right in granting the mandatory injunction, and that the decree appealed from must be affirmed.

*Decree affirmed, with costs to appellees.*