ALFRED BATES, PETITIONER-RESPONDENT, v. ASBURY IRON AND BRIDGE WORKS, INC., NEW JERSEY MANU-FACTURERS' CASUALTY INSURANCE COMPANY, RE-SPONDENT-PROSECUTOR.

Submitted May 4, 1943—Decided August 9, 1943.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *George E. Meredith.*

For the respondent, *David Roskein* (*Harry Cohn,* of counsel).

The opinion of the court was delivered by

Perskie, J. The basic question for decision on the facts of this workman's compensation case, is whether the employer's insurance carrier was properly deprived of the defense of the statute of limitations under the applicable provisions of the Accident Report Act of *Pamph. L.* 1924, *ch.* 187, *p.* 401, § 6.

On April 14th, 1930, Alfred Bates, 32 years of age and single, was employed, as an iron worker, by the Asbury Bridge and Iron Works, Inc., Neptune, New Jersey, at the weekly wage of $27.50. While so employed, he suffered an accident which concededly arose out of and in the course of his employment. His work, at the time, consisted of adding steel girders to a like pile of girders lying on a road. In order to do that work he was obliged to and did "walk on top of the girder straddle legged." While in that position, he "dropped" a smaller girder onto a larger one and as a result thereof "other girders rolled out pinning [his] legs" from his hips down. It made him "solid from his hips," he "could not bend." After being extricated from that position, he was given a stimulant and was immediately taken to this employer's physician (Dr. Wilbur) who administered emergency treatment and sent him home where he was confined to bed for approximately "six weeks." During that period he was visited by the "owner" of the company for whom he worked. After this six week period, he continued to be treated by Dr. Wilbur both at home and in the doctor's office for about "three months." For six months thereafter, he continued the application of an electric pad to his back. These treatments afforded no relief so he submitted to the treatment prescribed by a Dr. Moffett for about "fourteen months." Thereafter, he commenced a series of treatments at the New York Orthopaedic Hospital which continued at intervals for "about three years." During this period he submitted to three operations in the lumbar section of his spine, one of which required hospitalization for "twelve weeks" and each of the other two operations caused him to be confined to bed for "six weeks." Following these operations, he entered the Beth Israel Hospital at Newark, New Jersey, where a

fourth operation (Albee fusion) was performed on his spine requiring his stay in that hospital for "six weeks." Thereafter, he wore a cast which when removed required him to wear—as he did—a brace. He subsequently received medical treatment at the hands of the New Jersey Rehabilitation Commission. Intermittently throughout his efforts to effect a cure he did some work of a "light nature." The only money he received for the injuries which he sustained was the compensation he received from his employer's insurance carrier. This compensation was for temporary disability and covered a period of ten weeks at the rate of $18.83 a week or a total of $188.30. That the employer and its insurance carrier had knowledge of the accident and the resulting injury or disability beyond the waiting period is clear. We so find.

On November 14th, 1940, more than ten years after the date of the accident, Bates filed a claim petition for compensation with our Workmen's Compensation Bureau. It was served on December 4th, 1940. The employer's insurance carrier moved to dismiss the petition on the ground that the Bureau was without jurisdiction since the petition was not filed, as it allegedly should have been, within the time provided in the then effective act, namely, "within one year after the date on which the accident occurred." *Pamph. L.* 1919, *ch.* 93, *p.* 201, ¶ 23, *sub.* (*h*) (see amend. *Pamph. L.* 1931, *ch.* 280, *p.* 708). The motion was granted: a rule was entered accordingly on October 20th, 1942. Thereafter, on November 18th, 1942, the same deputy commissioner who granted the rule and dismissed the claim petition set aside and reinstated the cause to the trial calendar of the Bureau on the ground that the order of October 20th, 1942, was improvidently entered. To review the last stated action, a writ of *certiorari* was allowed the insurance carrier. *Cf. Licker* v. *J. G. Martin Box Co.*, 127 *N. J. L.* 136, 138, 139; 31 *Atl. Rep.* (*2d*) 595.

We think that the challenged action of the deputy commissioner was proper. The employer's insurance carrier, as we have seen, resisted the employee's right to compensation. At the time of the accident (April 14th, 1930) *Pamph. L.* 1924, *ch.* 187, *p.* 401, *supra,* was in effect. By this act (section 3)

the insurance carrier was obliged to make, on form pre-
scribed, certain reports as therein provided, and send same
to the Bureau and failure to do so deprived it from asserting
(section 6) the defense of the statute of limitations.

In the case at bar the second reports required by the act
(forms 2 and 3, here *Exhibits P-8* and *P-9*) to be sent to the
Bureau, "within three weeks after the carrier has learned of
the accident" were not filed until August 4th, 1930, almost
four months after the accident. Under these circumstances
the holding in the typical cases of *Jackson* v. *Florence Thread
Co.,* 12 *N. J. Mis. R.* 774; 175 *Atl. Rep.* 196; *affirmed,* 115
*N. J. L.* 175; 198 *Atl. Rep.* 465, and *Tiffany* v. *Starzmann,*
118 *N. J. L.* 57; 191 *Atl. Rep.* 465; *affirmed,* 118 *N. J. L.*
564; 194 *Atl. Rep.* 163, is controlling.

The insurance carrier argues for the first time that there
is no proof that it did not send these reports to the Bureau
within the statutory time. The only question the carrier
raised, as we have shown, was a legal question, namely, lack
of jurisdiction, based on the single ground that the claim
petition was not filed within the applicable statutory period
of one year. But assuming without so deciding that the
argument made is proper, nonetheless, it is clearly without
merit. These reports, produced pursuant to notice to the
insurance carrier, and admitted in evidence without objection,
bear the legend, "Date of preparing this blank 8/4/30."
Clearly, these reports could not have been sent to the Bureau
before they were prepared. These reports were either not
sent to the Bureau or they were sent on or after August 4th,
1930. We find the latter circumstance to be the fact. That
it is so was not challenged below. At all events, in either
of the stated circumstances, the insurance carrier failed to
comply with the provisions of the act and forfeited the right
to raise the defense of the statute of limitations.

Neither the fact that the employee appeared in the Bureau
at the time he received his allowance for temporary disability
and hence had, as is urged, received the benefits afforded him
by *Pamph. L.* 1924, *supra,* nor the fact that the legislature
has since repealed the provision which penalized the employer
or its insurance carrier from asserting the defense of the

statute of limitations (*Pamph. L.* 1931, *ch.* 278, *p.* 703), can operate to deprive the employee of his rights as they existed on the date of the accident.

Nor is it open to the carrier to argue, as it concededly argues here for the first time, that laches should operate to bar the employee's claim. There are at least two answers why this is not so. First, laches is an affirmative defense; it was not raised below and cannot be considered here. *Cf. Roussel* v. *Giessen,* 118 *N. J. Eq.* 333; 178 *Atl. Rep.* 732; *Board of Education of the City of Garfield* v. *State Board of Education and Beatrice Fish Rosenthal,* 130 *N. J. L.* 388. Second, if allowed, it would accomplish indirectly what could not be done directly, viz., to override a clear, existing and then applicable policy of the state in determining the rights of injured employees. And if that policy proved to be not sound then the legislature could, as it did, change it.

We have considered all the other points argued and find them to be without merit.

The writ is dismissed, with costs.