## POTTER v. THE STATE.

[No. 20,196. Filed February 23, 1904.]

CRIMINAL LAW.—*Involuntary Manslaughter.—Carrying Concealed Weapons.*—Defendant was unlawfully carrying a concealed weapon, a revolver, which was accidentally discharged, killing G., with whom defendant was scuffling at the time. *Held*, that the mere carrying of the weapon unlawfully did not render the defendant guilty of involuntary manslaughter.

From Marion Criminal Court (33,839); *Fremont Alford*, Judge.

William Potter was convicted of manslaughter and appeals. *Reversed.*

*W. E. Henderson* and *M. L. Clawson*, for appellant.

*C. W. Miller*, Attorney-General, *C. C. Hadley*, *W. C. Geake* and *L. G. Rothschild*, for the State.

JORDAN, J.—Appellant was tried before a jury in the lower court, and a verdict was returned finding him "guilty of manslaughter as charged in the indictment." Over his motion for a new trial, the court rendered judgment on the verdict, assessing his punishment at imprisonment in the Indiana Reformatory for not less than two nor more than twenty-one years, and that he be fined and disfranchised. From this judgment he appeals, and assigns, among other reasons, that the court erred in overruling his motion for a new trial.

The indictment upon which he was tried and convicted charged that William Potter on the 10th day of April, 1903, at the county of Marion, State of Indiana, "did then and there unlawfully, feloniously, and involuntarily, without malice, express or implied, kill one Hurva Garnett, by then and there in a rude, insolent, and angry manner, unlawfully and feloniously shooting at and against, and

into the body of the said Hurva Garnett with a certain revolver, a dangerous weapon, which he, the said William Potter, then and there unlawfully had, loaded with gunpowder and leaden balls, concealed upon his person, he, the said William Potter, not then and there being a traveler, thereby mortally wounding the said Hurva Garnett, from which mortal wound he, the said Hurva Garnett, then and there died, contrary to the form of the statute," etc.

The undisputed facts established by the evidence are substantially as follows: Appellant, a young colored man about twenty-four years old, residing in the city of Indianapolis, was on the day of the homicide, which is shown to have been on some Sunday in the month of April, 1903, going to his home in said city. As he was passing along the street near the corner of Rhode Island and Locke streets, the deceased, a boy about eighteen years old, together with some other boys, was standing at the corner of said streets. Appellant and the deceased, as it appears, were friends, and well acquainted with each other, and at times past had been in the habit of engaging in "friendly scuffles." As appellant approached the corner of the streets in question he was engaged in tossing up a small ball; and, when he came up to the point where the deceased was standing, some friendly conversation or bantering occurred between them in regard as to whether appellant could hit him with the ball which he had been tossing. The talk or bantering between the parties in question appears to have led up to a friendly play or scuffle, during which a loaded revolver that appellant at the time was carrying concealed in his pocket, or somewhere about his person, was accidently discharged, the ball therefrom passing through the clothing of appellant into the body of the deceased, from the effects of which the latter died.

Counsel for appellant contend that the verdict of the jury is contrary both to law and the evidence, and that the conviction of the accused can not thereunder be sustained.

Counsel for the State say in their brief: "This record presents a case which is somewhat novel in the annals of criminal jurisprudence in this State, if not in this country. The manner in which the deceased met his death, as shown by the record, was peculiar, to say the least; and whether appellant must suffer for the crime of involuntary manslaughter for circumstances created unintentionally, nevertheless unlawful, on his part, is the question presented for this court's consideration and solution."

Neither the facts as alleged in the indictment, nor as established by the evidence, constitute the crime of voluntary manslaughter. The pleader in drafting the indictment, however, appears to have at least attempted to charge appellant with the offense of involuntary manslaughter. As the indictment is not assailed in this court, we need not determine its sufficiency as to the charge of involuntary manslaughter, but simply treat it, for the purpose of this appeal, as presenting such a charge.

The crime of voluntary and involuntary manslaughter as defined by the statutes of this State, is as follows: "Whoever unlawfully kills any human being without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act, is guilty of manslaughter, and upon conviction thereof, shall be imprisoned in the state prison," etc. §1981 Burns 1901, §1908 Horner 1901. The statute prohibiting the carrying of concealed weapons is as follows: "Every person, not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword in cane, or any other dangerous or deadly weapon, concealed * * * shall, upon conviction thereof, be fined in any sum not exceeding $500." §2069 Burns 1901, §1985 Horner 1901. It is conceded, and properly so, that at the time of the homicide appellant was carrying the pistol in question in violation of the above statute. The question arises, then, did carrying the weapon unlawfully at the time of the homicide, in view of the

other facts in the case, render the accused guilty of the crime of involuntary manslaughter as charged in the indictment?

The question, under the circumstances, as counsel for the State assert, is certainly a novel one, within the "annals of criminal jurisprudence," and we believe that a search for authorities to sustain the judgment below, under the facts, will be futile. The theory of the State in the lower court, as the case appears to have been placed before the jury under the evidence and instructions of the court, was that the carrying of the revolver concealed by appellant, in violation of the statute, was the commission of an unlawful act from which the homicide resulted. It is undoubtedly true, as a general rule of law, that a person engaged in the commission of an unlawful act is legally responsible for all of the consequences which may naturally or necessarily flow or result from such unlawful act. But before this principle of law can have any application under the facts in the case at bar, it must appear that the homicide was the natural or necessary result of the act of appellant in carrying the revolver in violation of the statute.

Section 2215 Burns 1901 prohibits, under penalty, any person from hunting birds or other species of game with fire-arms on Sunday. If appellant, instead of carrying the pistol in question concealed, had been hunting with the weapon on Sunday in violation of the above statute, and when so hunting he had accidently discharged it and killed Garnett, who happened to be standing near by, could it, in reason, be asserted that his death was due to appellant's unlawful act of hunting on Sunday? Certainly not. If, while engaged in hunting, in violation of the statute, the pistol, through or by reason of the culpable negligence of appellant, had been discharged, and killed the deceased, the law, under such circumstances, would not have attributed his death to the unlawful act of hunting, but would have imputed it to such negligence. In fact, under such

circumstances, the unlawful act of hunting would not be a factor in, or add anything to, the case. It would constitute nothing more than a separate and distinct offense.

An eminent author on criminal law, says: "It is *malum prohibitum,* not *malum in se,* for an unauthorized person to kill game in England contrary to the statutes, if, in unlawfully shooting at game, he accidently kills a man, it is no more criminal in him than if he were authorized." 1 Bishop, Crim. Law (8th ed.), §332. See, also, 1 East, Pleas of the Crown, 260; 2 Roscoe, Crim. Ev., 800.

With equal reason and force it may be asserted that the mere fact that the accused was unlawfully carrying the weapon in question at the time it was accidentally discharged is not, under the circumstances, a material element in the case, for it is manifest that such unlawful act did not, during the scuffle between the parties, render the pistol any more liable to be discharged than though the carrying thereof had been lawful. Of course the law exacts of all persons the duty of being exceedingly cautious and careful in the use of or the handling of firearms or other dangerous agencies. *Surber* v. *State,* 99 Ind. 71. In fact, as a general rule, the law has such a high regard for human life that it considers as unlawful all acts which are dangerous to the person against whom they are directed, no matter how innocently they may be performed. A person will not be permitted to do an act which jeopardizes the life and safety of another, and then, upon plea of accident, escape liability for a homicide involuntarily resulting from his reckless or careless act or conduct. *State* v. *Dorsey,* 118 Ind. 167, 10 Am. St. 111; Gillett, Crim. Law (2d ed.), §502; 21 Am. & Eng. Ency. Law (2d ed.), 191, and cases cited.

It is not charged in the indictment in this case that the homicide resulted from the reckless, careless, or negligent manner in which appellant was using or handling the pistol at the time it was discharged. Consequently, under the

pleading, even though the facts could be said to justify or sustain such a charge, the case is not brought within the rule of culpable negligence, as affirmed and enforced in *State* v. *Dorsey, supra,* wherein the defendant was charged in the indictment with having carelessly and negligently run a locomotive engine into a passenger-car, thereby killing a person who was a passenger thereon. It will be read-. ily seen that, under the charge made by the indictment, the case at bar does not fall within that class of cases where the homicide is the result of culpable carelessness or negligence of the accused party in using or handling a dangerous weapon. 21 Am. & Eng. Ency. Law (2d ed.), 191-195, and cases cited in foot notes.

Without further comment upon the question involved we conclude that the conviction of appellant was wrong. The judgment of the lower court is therefore reversed, and the cause remanded, with directions to the court to grant appellant a new trial.