## JIM DIXON *v.* STATE,

[61 South. 423]

HOMICIDE. *Manslaughter. Misdemeanors. Acts malum in se. Malum prohibitum. Natural consequences. Questions for jury.*

Where accused committed an accidental homicide while engaged in the commission of a misdemeanor, which misdemeanor was merely *malum prohibitum* and not *malum in se*, he is not guilty of manslaughter unless the death of the deceased was the natural and necessary consequences of his acts and this is a question for the jury.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Jim Dixon was convicted of manslaughter and appeals. The facts are fully stated in the opinion of the court.

*Holmes & Holmes* and *Wells & Wells* for appellant.

*W. J. Croom* and *Geo. H. Ethridge,* assistant attorney-general, for the state.

No brief of counsel on either side found in the record.

COOK, J., delivered the opinion of the court.

Jim Dixon, defendant below, and his father, were drunk. Jim had a pistol concealed upon his person, and fired this pistol into the ground. The bullet struck a tin can, glanced, and struck and killed a young woman standing upon the porch or gallery of a storehouse near by. The pistol was fired by defendant while he was in or near the public highway, and the scene of the tragedy was near a crossroads country store in Yazoo county. Thus it will be observed that Jim was then and there violating three of the statutes of the state, viz., carrying a concealed weapon, drunk in a public place, and shooting on the public highway.

The trial court instructed the jury to find the defendant guilty of they believed from the evidence, beyond all reasonable doubt, that defendant was guilty of any one of these misdemeanors, and that while so guilty the bullet from the pistol struck and killed the deceased, the jury should return a verdict of manslaughter. Indisputably defendant was guilty of violating each of the statutes, and it could not be denied, and was not denied. The jury seems to have been composed of honest men, and in obedience to their oaths returned a verdict of guilty of manslaughter, as they had been instructed to do. There was no other possible verdict, when the court instructed the jury to find the defendant guilty, if he was guilty of doing what he admitted having done.

It logically follows that the jury was peremptorily directed to find the defendant guilty. The instructions given by the court embody the idea, and are so construed by the learned attorney-general, that it was not necessary that the doing of the things done should have had any natural or necessary relation to, or connection with, the homicide, but, on the contrary, it was only necessary to show that a misdemeanor was committed and a homicide followed. It will be noted that the instructions of the court omitted any qualifications, or limitations, but told the jury that the defendant was guilty of manslaughter if the deceased was killed by him while he was committing a misdemeanor, although the jury might believe that the death of the young woman was not the natural and probable result of the unlawful act.

The refused instructions asked by the defendant told the jury that they could not convict the defendant unless the death was the natural or probable result of the acts of defendant. The acts of defendant were not naturally evil, but were only wrong because prohibited by the statutory law of the state; they were not *per se* vicious, or dangerous, from the commission of which a depraved heart can be inferred, but are merely misdemeanors by

the act of the legislature. If his acts and conduct were of such a character as to evince a reckless and wanton disregard of human life and death resulting from such acts defendant would be criminally guilty and punishable for his crime of murder. While in the commission of an act essentially evil, persons will be held responsible for the results flowing therefrom, whether the thing done is denounced by the law, and punishable as such, or not.

It is gathered from the instructions of the court that the learned judge believed the acts of defendant were either inherently vicious, or that they *per se* constituted culpable negligence and the results following were the natural and necessary consequence. We think this was a question of fact for the jury's decision, and the court was not warranted in assuming the prerogative of deciding whether or not the result was the natural or necessary consequence of the act. The shocking and pathetic result of defendant's drunken debauch necessarily appeals to all, and a natural indignation calls for the punishment of the instrument of this deplorable and horrible tragedy. While this is true, we think that there was something left to be ascertained by the jury before this defendant could be condemned as a felon.

It is possible that, had the victim, instead of the defendant, fired her pistol upon the highway (and this is the worse feature of this case from a legal standpoint), and had the defendant received the pistol bullet in his brain, all of us would find ourselves sympathizing with her, rather than demanding punishment. It is not a felony to be intoxicated, or to carry concealed a deadly weapon, or to shoot upon the public highway, and we may add that it is not necessarily a felony to kill an innocent bystander while the killer is doing any one or all of those reprehensible things. "When a man, in the execution of one act, by misfortune, or chance, and not designedly, does another act, for which, if he had wilfully committed it, he would be liable to be punished—in that case, if the act

he was doing was lawful, or merely *malum prohibitum*, he shall not be punished for the act arising from misfortune or a chance; but if *malum in se* it is otherwise." Archbold's New Criminal Proc., 9. In *State* v. *Horton*, 139 N. C. 588, 51 S. E. 945, 1 L. R. A. (N. S.) 991, 111 Am. St. Rep. 818, 4 Ann. Cas. 797, the court discusses and differentiates *malum in se* and *malum prohibitum*, and that case is peculiarly applicable to the case now before us.

It is our opinion, under the facts of this case, that the acts committed by defendant were misdemeanors are not factors in, or add anything to, the case. *Potter* v. *State*, 162 Ind. 213, 70 N. E. 131, 64 L. R. A. 942, 102 Am. St. Rep. 198, 1 Ann. Cas. 32. We mean to say that the mere commission of the misdemeanors is not controlling, unless the death was the natural or necessary result of their commission, and this must be left to the jury as a fact to be determined by it alone. The principles involved in this case are not new, but run through all the books, and to cite authorities is unnecessary.

For the reason that the trial court instructed the jury, in effect, as a matter of law, that defendant was guilty of manslaughter, this case is reversed and remanded.

*Reversed and remanded.*