Commonwealth *v.* Ushka, Appellant.

Argued March 14, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and RHODES, JJ.

*Henry Thomas Dolan,* with him *Robert C. Duffy,* for
appellant.

*Raymond A. Speiser,* Assistant District Attorney,
with him *Charles F. Kelley,* District Attorney, for
appellee.

OPINION BY RHODES, J., April 13, 1938:

On March 29, 1937, at 6:15 a. m., defendant was driv-
ing his Ford car south on Limekiln Pike, in the city of
Philadelphia, and Edward Ferris was driving a one
and one-half ton truck west on Washington Lane. The
motor vehicles collided at the right angle intersection
of these streets, and as a result David Ferris, a fourteen-
year-old boy, seated beside his father, the driver of the
truck, was killed. Defendant was indicted, and con-
victed of involuntary manslaughter. Defendant's mo-
tion for new trial was refused, and defendant has
appealed.

At the close of Commonwealth's case, defendant de-
murred to the evidence; the trial judge overruled the

demurrer. At the termination of the trial, the trial judge refused defendant's written request for binding instructions. The only question we need to consider on this appeal is the sufficiency of the evidence to support the verdict of guilty.

Limekiln Pike extends north and south, and Washington Lane east and west. At the intersection Limekiln Pike has a 36-foot roadway, and 12-foot sidewalks. Washington Lane has an 18-foot paved roadway, with 13-foot shoulders on each side, and 13-foot sidewalks. On the northeast corner there is a vacant lot, on the northwest corner a taproom, and on the southwest corner a gas station. The collision of the two motor vehicles occurred 6 feet east of the west curb line of Limekiln Pike, and 13 feet south of the north curb line of Washington Lane. After the contact the truck swung around in an arc, and upset on its right side near the southwest corner of the intersection and 52 feet south from the point of collision. When the truck came to rest it was pointed in the opposite direction from which it had been proceeding. Appellant's car continued south, struck a pole near the southwest corner of the intersection, and came to a stop in front of a tailor shop about 130 feet from the point of collision. Appellant's brother was a passenger in his car, and testified for the defense. Appellant cleared the intersection before the truck overturned. The car was damaged at the left front door. The motor of the truck was pulled away from the transmission, its frame was bent, and it was broken on the right side. The driver of a car proceeding south on Limekiln Pike when 151 feet north of the north line of the intersection can see 175 feet east on Washington Lane, and when 75 feet north of the north line of the intersection can see 275 feet east on Washington Lane. It does not appear in evidence whether the corresponding distances would apply to the driver of a car proceeding west on Wash-

ington Lane. However, there was nothing to interfere with either driver's view of the other street across the vacant lot on the northeast corner of the intersection.

The driver of the truck did not see appellant's car until it was 15 or 20 feet away from him. He testified that the latter then swerved his car to the right, whereupon the truck and appellant's car came in contact. It appears that the front of the truck struck appellant's car at about the left front door. The truck driver also testified that as he approached the intersection, at a speed of about 20 miles an hour, he looked to the north and saw nothing (see *Reilly et al. v. Philadelphia et al.,* 328 Pa. 563, 566, 195 A. 897, 899), and that when he saw the car about 15 or 20 feet away it was too late to do anything. Appellant testified that at the time of the accident he was going 10 or 15 miles an hour, having reduced his speed as he approached the intersection. He further testified that about 100 feet from the intersection, or 115 feet from the point of collision, he looked to his left and saw no approaching vehicle, and that then he concerned himself with traffic which might be coming from his right. Proceeding across the intersection he did not see the truck until the impact.

The driver was removed from the overturned truck in an unconscious condition, and his son died from his injuries.

It is the position of the Commonwealth that the evidence established that appellant's act, while not unlawful in itself, was done in an unlawful manner, and that the death of the Ferris boy resulted from this act.

The burden was on the Commonwealth to prove beyond a reasonable doubt that appellant committed an unlawful act, not amounting to a felony, "or an act or acts not merely careless but also so rash and reckless as to approximate unlawfulness": *Com. v. Matteo,* 130 Pa. Superior Ct. 524, at page 527, 197 A. 787, at page 789. See, also, *Com. v. Gill,* 120 Pa. Superior Ct. 22, 182

A. 103; *Com. v. Mayberry,* 290 Pa. 195, 138 A. 686; *Com. v. Ochs,* 91 Pa. Superior Ct. 528; *Com. v. Godshalk,* 76 Pa. Superior Ct. 500; *Com. v. Samson,* 130 Pa. Superior Ct. 65, 196 A. 564.

That the death of David Ferris resulted from the injuries which he received at the time of the collision was conceded by appellant.

The Commonwealth maintains that the attendant circumstances warranted submission of the case to the jury; that the location of the vehicles after the accident was evidence of excessive speed of appellant's car under the circumstances; that the physical facts, together with the admission of appellant that he did not look to the left for approaching traffic on Washington Lane after reaching a point about 100 feet from the north line of the intersection, were sufficient to sustain the conviction.

The Act of March 31, 1860, P. L. 382, § 79, as amended by the Act of April 11, 1929, P. L. 513, § 1, 18 PS § 2226, refers to "involuntary manslaughter, happening in consequence of an unlawful act." The degree of negligence, if any, is not important where one while doing an unlawful act accidentally kills another. "If the act is unlawful,—that is, is forbidden by law, illegal, contrary to law,—and the death of another results as a consequence of it, it constitutes involuntary manslaughter": *Com. v. Gill,* supra, 120 Pa. Superior Ct. 22, at page 35, 182 A. 103, at page 108.

But where it is alleged that death resulted from the doing of an act "lawful in itself, but done in an unlawful manner and without due caution and circumspection," there must be present, in order to sustain a conviction of involuntary manslaughter, some element of rash or reckless conduct, which approximates acting in an unlawful manner. *Com. v. Gill,* supra.

There was no evidence, and it is not contended by the Commonwealth, that David Ferris was accidentally

killed as the result of appellant's doing an unlawful act. There was no proof that he was negligently operating his automobile at a speed unlawful under the circumstances. There was no direct evidence as to excessive speed of appellant's car. Assuming that appellant may have been negligent in approaching the intersection without looking again to his left, after reaching a point 100 feet from the north line of such intersection, proof that there was also present an element of rashness or recklessness, approximating unlawfulness, must be found, if at all, from the relative position and condition of the motor vehicles after the collision. Mere negligence, without more being shown, would not sustain appellant's conviction.

Appellant was approaching the intersection from the right of the driver of the truck. "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in this act. The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder": Act of May 1, 1929, P. L. 905, art. 10, § 1013 (a), as amended by the Act of June 22, 1931, P. L. 751, § 2 (75 PS § 572). (Further amended by the Act of June 29, 1937, P. L. 2329, §3.)

Appellant, having the statutory right of way, could properly assume that the operator of a motor vehicle approaching the intersection would use reasonable care and have his car under control. "Of course one having the right of way may not blindly proceed irrespective of obvious approaching danger, but his rights, duties and obligations are not the same as those of one with the right of way against him": *Evans and Evans v. Stewart,* 103 Pa. Superior Ct. 549, at page 552, 157 A. 515, at page 516.

Appellant's failure to look again to the left, under

the circumstances, would not itself be a careless act so rash and reckless as to approximate unlawfulness. The only evidence from which it might be inferred that he was otherwise proceeding in a rash or reckless manner at the time of the accident was the relative position and condition of the motor vehicles after the collision. The position of cars after an accident may warrant some inferences. See *Com. v. Fowner*, 97 Pa. Superior Ct. 566; *Com. v. Matteo*, supra. But the physical facts in those cases were much different from the physical facts in the instant case. After appellant's Ford car was struck on the left front door by the one and one-half ton truck, it went over to the right, hit a telephone pole at the curb, and continued south on Limekiln Pike about 78 feet. From the place of the collision it traversed about 130 feet. It did not upset, but stopped in front of the tailor shop on Limekiln Pike. The truck swung to the left, turned completely around, and fell over on its right side, which was damaged, at the southwest corner of the intersection. There were skid marks showing the arc made by the truck. From the point of collision to the overturned truck the distance in a straight line was 52 feet.

Such circumstances alone do not warrant the inference that appellant was driving his car at an excessive rate of speed or in a rash or reckless manner. See *Com. v. Kalb*, 129 Pa. Superior Ct. 241, 195 A. 428. Appellant testified that as he approached and entered the intersection he was traveling at 10 to 15 miles an hour; and that he was stunned when he got out of his car.

It is significant that the truck, not having the statutory right of way, struck the left front of appellant's car, which did have the right of way, at a point 13 feet south of the north line of the intersection. In the Gill case the defendant did not have the statutory right of way. The courses of the Ferris truck and the Gill taxicab had some similarity. In the Gill case we held that

the attendant circumstances warranted the submission of the case to the jury. We do not consider that case controlling as to appellant in the instant case.

The evidence being insufficient to establish the elements of involuntary manslaughter, the trial judge should have directed the jury to find appellant not guilty.

Judgment is reversed, and defendant is discharged without day.