## Commonwealth *v.* Williams, Appellant.

Argued April 11, 1938. 

 Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and RHODES, JJ. 

*George I. Bloom,* of *Bloom & Bloom,* with him *Sher-
man H. Siegel,* for appellant.

*Wallace S. Gourley,* First Assistant District Attor-
ney, with him *James C. Bane,* District Attorney, for
appellee.

OPINION BY RHODES, J., October 14, 1938:

Defendant, Wendell Williams, was convicted in the
court below of the involuntary manslaughter of one
James Vincent, and he has appealed. The death oc-
curred when an automobile operated by appellant col-
lided with a telephone pole. Appellant had been a duly
licensed operator for several years prior to 1936, but
had failed to renew his operator's license in 1936, and
had no such license at the time of the accident on De-

cember 25th of that year. The verdict of the jury was as follows: "And now, to-wit: February 12, 1937, we the Jurors empanelled in the above case, find the defendant not guilty on any ground other than his not having an operator's license or permit, but having found that he did not have such a license or permit our verdict is subject to the opinion of the Court upon the question of law whether or not his driving without one was sufficient in and of itself to render him guilty, which question was reserved in the charge for argument before all the judges. If the court should be of opinion that such driving was in itself such an unlawful act as to render defendant criminally responsible for the death of James Vincent then we find defendant guilty; but if the court should be of the contrary opinion upon this question of law, then we find defendant not guilty."

After argument upon the question of law so reserved to the court, the court below was of the opinion that such unlicensed driving was an unlawful act sufficient to render appellant guilty of involuntary manslaughter as a matter of law, and accordingly found appellant guilty of that crime, and sentence was imposed.

It will be observed that appellant has been absolved by the verdict of any negligence or recklessness in the operation of the motor vehicle, and the conviction must be sustained, if at all, upon the ground that the death occurred while appellant was operating the motor vehicle in violation of section 601, art. 6, of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, section 2, 75 PS § 161, reading as follows: "No person, except those expressly exempted under this act, shall operate any motor vehicle upon a highway in this Commonwealth, unless such person has been licensed as an operator or a learner by the department under the provisions of this act," and providing a penalty therefor.

In Pennsylvania there is no statutory definition of involuntary manslaughter, but in *Com. v. Mayberry,* 290 Pa. 195, at page 198, 138 A. 686, at pages 687, 688, it was said to consist in " 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty': 29 Corpus Juris, page 1148; Wharton on Homicide (3d ed.) section 211; *Com. v. Micuso,* 273 Pa. 474 [117 A. 211] ; *Com. v. Gable,* 7 S. & R. 422; 13 R. C. L. page 784."

The unlawful act proven in the instant case was neither a felony nor did it naturally tend to cause death or great bodily harm. By the Act of April 22, 1794, 3 Smith's Laws, p. 186, "manslaughter" was divided into two classes, "voluntary manslaughter" (section 7), and "involuntary manslaughter, happening in consequence of an unlawful act" (section 8), and this was substantially re-enacted in section 79 of the Criminal Code (Act of March 31, 1860, P. L. 382, as amended by Act of April 11, 1929, P. L. 513, 18 PS §2226). *Com. v. Gill,* 120 Pa. Superior Ct. 22, 28, 182 A. 103.

A motor vehicle is not an outlawed instrumentality, but its use is lawful only under certain conditions. The failure of one to procure an operator's license, without more, is not an offense under The Vehicle Code. It is only when the omission to secure an operator's license is coupled with the operation of a motor vehicle that it becomes cognizable by the law. In other words, under section 601 of The Vehicle Code, supra, any person, except those exempt, who operates a motor vehicle commits an unlawful act, but it becomes lawful when the operator possesses a license.

We think that there is merit in appellant's contention that in order to sustain the conviction the Com-

monwealth is obliged to show that the death was the result of, or happened in consequence of, the unlawful act as we have defined it, and that the Commonwealth failed to do so in the instant case. In *Com. v. Ushka,* 130 Pa. Superior Ct. 600, at page 604, 198 A. 465, at page 467, we said, quoting from *Com. v. Gill,* supra, 120 Pa. Superior Ct. 22, at page 35, 182 A. 103, at page 108: " 'If the act is unlawful,—that is, is forbidden by law, illegal, contrary to law,—and the death of another results as a consequence of it, it constitutes involuntary manslaughter.' "

In our opinion, the language of the above cited statutes and cases implies more than that the unlawful act should be a remote unit in a sequence of events culminating in a fatality, and requires such act to be something more than a factor which might be denominated more properly as an attendant condition than a cause of the death.

We find no decisions of our appellate courts which we consider determinative. The Commonwealth and the court below rely upon *Com. v. Ernesto et al.,* 93 Pa. Superior Ct. 339, and *Com. v. Mango,* 101 Pa. Superior Ct. 385. In these cases it was found on sufficient evidence that the acts in which defendants were engaged were the causes of the deaths. There was a direct relationship or a causal connection between the illegal acts and the deaths. Hence it could be said that the deaths happened in consequence of the unlawful acts in which the defendants were engaged. The recent case of *Com. v. Samson,* 130 Pa. Superior Ct. 65, 196 A. 564, is distinguishable from the instant case. In the Samson case there was a causal connection between defendant's negligence to perform his legal duty and the collapse of the building which resulted in seven lives being lost. We there held, at page 73: "Even if we assume that the appellant's failure to obtain a license to operate these premises as a tenement house does not

constitute a basis for a conviction of manslaughter, the verdict, in our judgment, can nevertheless be sustained, as there was sufficient evidence of negligence, with elements of recklessness in disregarding the safety of the occupants, to constitute culpable negligence."

But the question has been considered in other jurisdictions,[1] and answered favorably to the position taken by appellant in this case.

In *Potter v. State,* 162 Ind. 213, 70 N. E. 129, 102 Am. S. R. 198, 64 L. R. A. 942, 1 Ann. Cas. 32, one of the participants in a friendly struggle was killed by the accidental discharge of a pistol unlawfully carried in the pocket of the other. The Indiana statute provided: "Whoever unlawfully kills any human being without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act, is guilty of manslaughter ......" Defendant was convicted of manslaughter, and in reversing judgment and awarding a new trial, the court said: "It is undoubtedly true, as a general rule of law, that a person engaged in the commission of an unlawful act is legally responsible for all of the consequences which may naturally or necessarily flow or result from such unlawful act. But before this principle of law can have any application under the facts in the case at bar, it must appear that the homicide was the natural or necessary result of the act of appellant in carrying the revolver in violation of the statute."

---

[1] See *People v. Mulcahy,* 318 Ill. 332, 149 N. E. 266; *Jackson v. State,* 101 Ohio St. 152, 127 N. E. 870; *Votre v. State,* 192 Ind. 684, 138 N. E. 257; *State v. Budge,* 126 Me. 223, 137 A. 244; *Dixon v. State,* 104 Miss. 410, 61 So. 423; *Thiede v. State,* 106 Neb. 48, 182 N. W. 570; *State v. Reitze,* 86 N. J. L. 407, 92 A. 576; *State v. Nichols,* 34 N. M. 639, 288 P. 407; *State v. Horton,* 139 N. C. 588, 51 S. E. 945; *Holder v. State,* 152 Tenn. 390, 277 S. W. 900; *Brittain v. State,* 36 Tex. Crim. Rep. 406, 37 S. W. 758; *Potter v. State,* 162 Ind. 213, 70 N. E. 129, 102 Am. S. R. 198, 64 L. R. A. 942, 1 Ann. Cas. 32.

In *Votre v. State,* 192 Ind. 684, 138 N. E. 257, a conviction of involuntary manslaughter was reversed on appeal, the court holding: "Inasmuch as the death was not the natural result or the probable consequence of the commission of the unlawful act, it follows that the evidence is insufficient to sustain the verdict."

In the instant case the proper conclusion would seem to be that the unlawful act must be something more than an attendant condition without which the death could not have occurred; that the death must be the natural result or probable consequence of the unlawful act.

In *State v. Budge,* 126 Me. 223, 137 A. 244, defendant was indicted for the crime of manslaughter by reason of having caused the death of another by improper operation of an automobile on the public highway. The appellate court stated that if "the unlawful act in no way contributed to the injuries, as where a person driving an automobile 17 or even 20 miles per hour, when the statutory limit was only 15 miles per hour, no other element of negligence being present, and the deceased unexpectedly stepped in front of the automobile without warning, and at a point in a street where pedestrians might not be expected to cross, and it could not be found that the excess of the legal limit of speed at which the automobile was being driven in any way contributed to the accident—though the contributory negligence of the deceased is no defense in a criminal prosecution—a homicide under such conditions cannot be held to be more than a mere accident or misadventure."

In *Holder v. State,* 152 Tenn. 390, 277 S. W. 900, deceased was killed unintentionally by a pistol carried by defendant in violation of the law. On appeal the court held: "Before the plaintiff in error can be found guilty of involuntary manslaughter, something more should appear than that he merely carried a pistol in violation of the statute. It must appear that he pointed

the pistol at the deceased, or intentionally shot it so as to endanger deceased, or otherwise handled the weapon in such a manner as to make the killing of deceased a natural or probable result of such conduct."

As stated in *State v. Nichols,* 34 N. M. 639, 288 P. 407, it would be "ridiculous to say that any accidental killing resulted indirectly or remotely while committing an unlawful act is involuntary manslaughter. Our statutes make it unlawful for a person to drive an automobile without a red tail-light or without first having obtained a license. If, while committing such an unlawful act alone, a person is accidentally and unavoidably run over and killed, the unlawful act could have no bearing whatsoever upon the killing. Would any one contend that the driver be guilty of involuntary manslaughter?"

In the instant case, it is true that the death would not have occurred if appellant's automobile had not been on the highway. Its presence was unquestionably a condition without which Vincent's death could not have taken place. But appellant's violation of The Vehicle Code had no direct relationship to the death.

A criminal statute must be strictly construed. If appellant's conviction is sustained, it would logically follow that, if deceased had intentionally thrown himself in front of appellant's automobile and had been killed, appellant would have been equally guilty of involuntary manslaughter. A construction that must lead to such a conclusion would be neither reasonable nor humane.[2]

In the opinion of the court below, incorporated as part of the agreed statement of facts, it is said: "The testimony was to the effect that while the defendant was driving along a street he saw a car, coming in the opposite direction, swerve from its path and start to

---

[2] See Involuntary Manslaughter—Death Caused While Driving Without a License, 10 Temple Law Quarterly 67.

move in his direction, and when, with a view to avoiding a collision, he drove farther over upon his side of the street, his wheels encountered some ice or frost, with the result that his car skidded in such a way as to strike a telephone pole and cause the death of Vincent who was a passenger in the car."

It is obvious that the testimony was insufficient to show any relationship between the death and the unlawful act of appellant, or to establish that the death was the natural result or probable consequence of appellant's unlawful act. Appellant was not negligent; he was blameless except for the violation of section 601 of The Vehicle Code, supra. It cannot be logically concluded that the death "happened in consequence of" such violation. Until the swerve of the approaching automobile, appellant and deceased were riding in safety. Remove that factor, and it is perceived, without difficulty, that deceased would still be living, despite the fact that appellant operated his automobile without an operator's license.

Judgment of the court below is reversed, and defendant is discharged.