## Good Will Fire Company License

*Robert T. McCracken* and *Carl A. Cassone,* for applicant.

*Horace A. Segelbaum* and *Linn H. Schantz,* Deputy Attorneys General, and *T. McKeen Chidsey,* Attorney General, for Pennsylvania Liquor Control Board.

PER CURIAM, September 26, 1949.—Good Will Fire Company, a bona fide club located in Bethlehem, Lehigh County, appealed to this court from the refusal of the Pennsylvania Liquor Control Board to grant it a club retail dispenser's license under the Beverage License Law of May 3, 1933, P. L. 252, as variously amended, 47 PS §§84 to 100 r.

The reason given for refusal was that there were already a sufficient number of licensed places, including clubs, within the municipality. It is stipulated that there are 66 licenses in force in the City of Bethlehem, exclusive of clubs and hotels as defined in the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1001, 2, 3, and it is further stipulated that the population of Bethlehem according to the 1940 census is 58,490.

While the board based its refusal of a license upon the exercise of its discretion that there were already a sufficient number of licensed places in Bethlehem and not upon the limitation of licenses under the Quota Act, the parties have stipulated that the question at

issue is whether club licenses are within the class of licenses prohibited when the quota has been exceeded.

In view of our decision, this discrepancy is immaterial, for if, under the Quota Act, the board had no right to grant an additional license in Bethlehem, then their refusal of a license for any reason whatsoever must be sustained: Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, 255 and 260. On the other hand, since in this case the quota had been exceeded prior to appellant's application, it is an academic question whether they would have had the right in their discretion to have denied it, had the quota not been exceeded.

The language of each clause of the 1939 act restricting restaurant and club licenses to a ratio of population is without difficulty.

The first clause of section 2 of the act, 47 PS §744-1002, reads:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs."

It clearly prohibits any retail licenses whatever above a certain quota. The quota is arrived at by counting up all retail licenses, whether for liquor or for malt and brewed beverages, whether for restaurants or eating stands and excepting only in the calculation the licenses of hotels, as defined in the act, and those of clubs.

The words "exclusive of licenses granted to hotels, as defined in this act, and clubs" must modify the word "licenses", which is found at two other places in the clause, once as the subject of the verb "shall be

granted" and once in the phrase 'in excess of one of such licenses, of any class".

If it were to modify that word "licenses", which is the subject of the sentence, it should for clarity have followed it and the word "excepting" would have been much more appropriate than "exclusive of". Furthermore, the word "granted" following the disputed word indicates existing licenses rather than those for which an application might be made.

We are convinced, therefore, that the phrase given modifies the second word "licenses" and that the clause, instead of being interpreted "No licenses, exclusive of licenses granted to hotels and clubs, shall hereafter be granted, etc.", was intended to mean "No licenses shall hereafter be granted in excess of one of such licenses, exclusive of licenses granted to hotels and clubs, for each one thousand inhabitants, etc." That interpretation was given it by Judge Knight in Pottstown Veterans' Association License, 36 D. & C. 593, by Judge Sheeley in Harrisburg Country Club Appeal, no. 342, Q. S. of Dauphin County, Jan. sess., 1941, and impliedly in Seagrave Social Club's License, 37 D. & C. 575, and in many other cases upholding the quota restriction against clubs.

There is no difficulty with the meaning of the last clause in this section of the 1939 act (47 PS §744-1002) :

"But where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

It must be conceded and is conceded that no matter how one interprets the first clause, fixing a quota, that quota has been exceeded in this case.

Even if the first clause were interpreted to exclude clubs from the prohibition rather than from the com-

putation therein provided, this last clause would, in clear and unmistakable language, prohibit the granting of club licenses where the quota is exceeded. If the two clauses were contradictory—and we do not believe they are—then under section 64 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §564, whenever, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail: Commonwealth v. One Studebaker Sedan, 140 Pa. Superior Ct. 197.

The history of the legislation is of no avail to appellant. In the course of club quota litigation, we have been furnished with copies of the Quota Act in its various stages as well as of the legislative journal charting its course through House, Senate and conference. Assuming for this purpose that we have the right to use this information as a guide to our judicial knowledge, we find nothing in it to sustain appellant's contention. True, the Quota Act as introduced made no mention of clubs, but such omission in the final enactment would not have helped appellant. According to the records furnished, all of the debate and proposed amendments referred to whether or not club licenses should be counted in computing the quota. That contention defeats appellant's argument that clubs were considered to be beyond the pale of the act, for it indicates not only that club licenses were in the minds of the legislators, but also that they were more interested in seeing that club licenses did not operate to fill quotas than that they should be eliminated from the operation of the act.

We cannot decide this case upon the basis of any legislation passed or considered by other legislatures which failed to become law. It is more logical to argue, from the futile attempt to enact such legislation, that the legislature recognized that the Quota Act applied to clubs, than that the 1939 legislature did not intend

it so to apply. Furthermore, we are bound to construe only the 1939 act, our legislature's latest effective word upon the subject.

An argument strongly pressed upon us is that to interpret it to forbid the issuance of licenses to clubs would produce an absurdity. For the reasons hereinafter given, we see no such absurdity, but even so, such an absurdity could more logically be resolved by striking out the words "and clubs" in the first clause than by inserting it in the second.

The presence of the words "and clubs" in the first clause and not in the last, works to the detriment of appellant's case rather than to its advancement, for it shows that the legislature had club licenses under consideration and it must be presumed to have intended to exclude them from the computation of a quota and to include them in the prohibition against obtaining new licenses.

There is a valid reason for basing a quota upon the ratio of restaurant and eating places to population, regardless of the number of extant club licenses. A club is an exclusive organization and, no matter how many club licenses there may be in existence, it is conceivable that large sections of the population may not be served by them. It would be unfair to this portion of the population to be deprived of the privileges enjoyed by their more aristocratic or more sociable neighbors. There is also a theory that restaurants are for the benefit of the traveling public who may not belong to a convenient club.

It has been pointed out as an absurdity that, if the principle of license quotas applied to clubs is sound, the act has made no provision for the situation where the license quota of restaurants has not been filled and that in that case an infinite number of club licenses could be granted. This argument overlooks two points. First, an act of legislature may, in the eyes of the

courts, be unwise, unfair and arbitrary, without being absurd or unworkable. Second, there is already a curb on the number of club licenses in that the Liquor Control Board may, *in its discretion*, refuse such licenses. Clearly, an overabundance of club licenses in a community would justify use of discretion on the part of the Liquor Control Board in refusing further club licenses. So the dire results prophesied in cases where the quota is not exceeded, are not likely to occur.

On the other hand, it cannot be denied that there is a direct relationship between the public welfare and the ratio of licenses of all descriptions to population. An excessive number of licensees always has encouraged law violation in the competition for business and certainly the different types of licenses compete with one another. In the act under consideration, the legislature has recognized this principle and has limited the discretion of the Liquor Control Board by forbidding new club licenses where there are sufficient other licensees to serve the community. That was their privilege.

On the other hand, we can understand why the legislature excluded bona fide hotels from the quota restrictions. It was assumed that no one would build so large a building merely for the sake of a liquor license. Our own experience and apparently that of the legislature has proved that this assumption was false and that the subterfuges of law evaders are past foretelling. The 1949 legislature, therefore, without disturbing the sharply debated question of clubs, redefined hotels to prevent evasion of the former broad provisions: Act of May 9, 1949, P. L. 964.

The constitutionality of the Quota Act has been conclusively decided in Kester's Appeal, 140 Pa. Superior Ct. 293, 297.

The argument is further made that the Quota Act forbids only licenses for the *retail sale* of beverages

and liquors and that licenses to clubs are not for retail sales and hence not forbidden.

The Quota Act itself contains only three definitions: (1) Of "hotels"; (2) of "persons", a word not used in the body of the act, and (3) of "municipality". We take it, therefore, that all other words are used in their ordinary sense according to common and approved usage: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533. Our attention is called to the fact that the words "license for retail sale" are not used in either the Beverage License Law of 1933, supra, or the Liquor Control Act, supra. Even if we were to go to those acts rather than to a dictionary for a definition or if we used either one or both, the result would be the same, for we find no inconsistency in the use of those terms in any of the acts with each other or with common and approved usage.

Licensed clubs engage in *sale* of liquor or malt or brewed beverages or both. The subtle and complex rationalizations of Klein v. Livingston Club, 177 Pa. 224, have been annulled by legislative act and finally overruled by a realistic view of the situation by our appellate courts: Commonwealth v. West Philadelphia Fidelio Mannerchor, 115 Pa. Superior Ct. 241, allocatur refused by Supreme Court, 117 Pa. Superior Ct. xxix; Benner et al. v. Tacony A. A., 328 Pa. 577, 580.

The very license for which appellant is applying is known as a retail dispenser's license: Beverage License Law of 1933, P. L. 252, sec. 6, as amended, 47 PS §89. That act (section 3, 47 PS §86) provides that it shall be unlawful for any unlicensed person to *sell* to another for consumption upon the premises any malt or brewed beverages. The act is so full of expressions showing that all licensees (other than manufacturers, importers and distributors) not only sell but sell at retail that it would be a useless burden to belabor this opinion with all of the instances. We might call atten-

tion to the fact that consumption on the premises implies retail sale in the absence of a Gargantuan appetite. Limitation of the amount to be sold for consumption off the premises and the absolute restriction of such sale to clubs also can refer only to retail sales.

It is argued that clubs are not included in the definition of "retail dispensers" in the Beverage License Law, 47 PS §85 (f), because that definition means and includes only those selling for consumption on the premises, who are also entitled to sell 72 ounces (now 124 ounces by the Act of April 28, 1949, P. L. 769) for consumption off the premises, while clubs may not sell for off premises consumption: Act of 1933, P. L. 252, sec. 22, as amended, 47 PS §100e (a). Granting that a legislative definition is binding (McCarl v. Houston Borough, 263 Pa. 1, 4) we feel that failure to include clubs in the definition of "retail dispensers" cannot affect our case for several reasons. First, the entire force of the argument is destroyed when we find that, despite the definition, the same act in section 6 (47 PS §89) authorizes the granting to clubs of a retail dispenser's license. Second, the binding force of a definition is only upon those very words defined. The definitions in the Beverage License Law are neither exhaustive nor mutually exclusive. Because clubs do not comply with the technical definition "retail dispensers", it does not follow that they are manufacturers, wholesalers or distributors or that they do not dispense or that they do not sell at retail. From the undefined words in the act, it is clear that clubs do sell and at retail and that under the Beverage Tax Law they hold a retail dispenser's license and it is immaterial therefore whether or not they come within the statutory definition "retail dispenser". Third, we are not interpreting the Beverage License Law, but another one which does not define any of the disputed terms nor adopt definitions from any other act. The great fallacy

in the argument from definition lies in the insistence that all definitions are mutually exclusive. This overlooks the fact that a club is not only a "club" as defined in the act, but is as well a "licensee", either an "association" or a "corporation" and, therefore, also a "person" as there defined, despite the fact that there are also associations, corporations, persons and licensees who are not clubs. The special definition of "person" as applied to clubs is used only in the penal provisions of the Liquor Control Act; in all other provisions the word "person" includes associations and corporations and therefore clubs.

We take it then that in the common sense of the term, a club's dealing with its members in relation to liquor is a sale, for it complies with the very definition of a sale under the Pennsylvania Liquor Control Act of November 29, 1933, spec. sess. P. L. 15, sec. 2, as amended and reënacted, 47 PS §744-2, that a sale "shall include any transfer of liquor, etc., for a consideration".

Commonwealth v. West Philadelphia Fidelio Mannerchor, 115 Pa. Superior Ct. 241, is conclusive on this point that clubs licensed by the Liquor Control Board *sell* liquor. If it be argued that the Mannerchor decision is dictum, we reply that the Superior Court held that violation of the liquor laws was a prerequisite to the lower court's jurisdiction to revoke and sale or no sale was, therefore, the very issue upon even the most limited certiorari. Even if it were dictum, it would be the highest type of dictum, namely, a deliberate expression of considered opinion on a matter presented to, argued before and passed upon by the whole court and entitled, therefore, to be taken by a subordinate court as an authoritative expression of applicable law. See Gaal's Appeal, 57 D. & C. 102. The whole matter of what is and what is not obiter dictum in the opinions of our Superior Court has also

become moot, since there is now an appeal under the Acts of May 20, 1949, P. L. 1546 and P. L. 1551.

The fact that the legislature by amendment made lawful what the Mannerchor case found unlawful, namely, sales by clubs on Sunday, does not affect the authority of that case on the interpretation of the word "sold". In fact, the necessity for the amendment if clubs were to be allowed to deal in liquor on Sunday, is implied acceptance by the legislature of the Superior Court's interpretation of the act.

If it be contended that our Superior Court could not overrule the Supreme Court's decision in Klein v. Livingston Club, 177 Pa. 224, it is enough to say that the Supreme Court of Pennsylvania in Benner v. Tacony A. A., 328 Pa. 577, not only cited the Mannerchor case with approval (p. 580), but stated as a fact that, since the enactment of the Beverage License Law, the transaction between a club and its members is a sale.

Appellant argues, however, that it is a special kind of sale, depending only upon the language of the particular act and not referable to the Quota Law use of the word "sale". This argument is inconsistent with appellant's argument that the acts are in pari materia —a matter to be discussed later—and overlooks the fact that a club's transaction in liquor is a sale, not only within the common meaning of the terms, but also within the statutory definition of it in the Liquor Control Law and the judicial interpretation of it in the Mannerchor and Tacony A A. cases, supra. If any other support were needed for this proposition, we would find it in Blauner's, Inc., v. Philadelphia, 330 Pa. 342, which subjects to a sales tax all transfers of food and liquor by a club.

Appellant contends that the Mannerchor, Tacony A. A. and Blauner cases, supra, are decided upon the peculiar wording of the respective statutes and that they leave unimpaired the former theory of Klein v.

Livingston Club, supra, and of Union League v. Rans-ley, 39 Superior Ct. 514, that clubs do not *sell* to their members. A study of the Blauner case shows just the opposite, for while the Blauner opinion (p. 349) is based upon "a transfer of possession for a considera-tion" without reference to the technical meaning of the word "sale", it reiterates the language of the Ta-cony A. A. case that, regardless of statutory construc-tion, "the ordinary meaning of a 'sale' is a transfer of title to property for a consideration" and that these requisites of sales are present when a club member orders a drink and pays for it. Since "transfer of malt or brewed beverages for a consideration" is the exact language of the Beverage License Law in defining sales (section 2(o), as amended by the Act of June 16, 1937, P. L. 1827, 47 PS §85(o)), there is no longer any question that the Livingston Club case is inapplicable, if not overruled, and that the Union League case is lim-ited to mercantile tax law. Since in any event, holders of liquor licenses were not subject to the Mercantile Tax Law as then written (Fixl's Appeal, 336 Pa. 177) there is little present significance to any part of the Union League decision.

If England and some other states still cling to the sporting theory of the relationship between a club and its members, those decisions cannot stand in the light of the certain and positive decisions to the con-trary by the highest courts of Pennsylvania. For every pin point discovered by appellant's diligence pointing in the other direction, there are many huge arrows unmistakably directing us to find that club transac-tions in liquor are *sales*.

We have no less difficulty in finding that club sales are at retail and our analysis is the same in regard to this word as with the word "sale". There are some very tenuous arguments to show that the word "retail"

should not apply, but against these we find a cloud of witnesses that such sales are at retail.

Furthermore, appellant asks us to be bound by a chain of reasoning with the following links: (1) The Beverage License Law, Liquor Control Act, and the Quota Law are in pari materia; (2) being so, definitions in one act apply to all three acts; (3) words occurring in any one act, which recur in any of the others must be given exactly that same meaning in all three acts; (4) such words cannot, therefore, be given their common meaning; (5) the Beverage License Law defines retail dispensers in terms which do not include clubs; (6) hence, clubs do not hold licenses to sell at retail within the Quota Law.

There is sound reason to consider the three basic laws as being in pari materia. It does not follow, however, that everything in each act must be read into and to apply to each other act. The Beverage License Law and the Liquor Control Law apply to the handling of different but related products; the Quota Law to both products. Since the legislature chose to give different names to licenses for the same kind of transaction in different commodities, it shows a clear intention not to carry the definition of one such license to the same type of license in the other act. In the Beverage License Law, all retail licenses are called dispenser's licenses—we find this to be true because of its use throughout the act, despite the fact that the definition of retail dispensers carries powers later (section 22, 47 PS §100e) denied to clubs—and in the Liquor Control Act, retail licenses are called hotel liquor licenses, restaurant liquor licenses and club and club catering liquor licenses: Act of November 29, 1933, spec. sess., P. L. 15, sec. 401, as amended, 47 PS §744-401. The legislature, therefore, has not seen fit to carry the definition of "retail dispensers" into either the Liquor Control Act or the Quota Act.

Furthermore, appellant would place too rigid a restriction upon the interpretation of defined terms. It is argued, for instance, that if the word "club" is defined, then a club is neither a person, an association or a corporation nor anything else defined in the same or a related act, although such definition might aptly fit a club and clearly apply to it. On the other hand, appellant seeks to limit the term "retail dispenser" first to cover only licensees who may sell for consumption off the premises and then to apply the term to those wholly undefined: "Licensees for the retail sale of liquor", under the Quota Law. This is blowing hot and cold.

We hold then that, although the acts may be in pari materia, defined terms are not mutually exclusive and that any term fairly applicable to any licensee applies to such licensee unless such other definition is inconsistent with the definition of that specific term; that the exact definition is binding only when the exact term defined has been used and that a term not expressly defined is used in its common meaning.

Applying these findings to our case, while the definition of the term "retail dispenser" may apply when the Quota Law is considered in connection with applicants for beverage licenses, since the phrase in the Quota Law is "licenses to sell at retail" which is not the term defined in the Beverage License Law, that peculiar and technical definition cannot be extended to other and different words. Since the word "retail" used in the Quota Law is nowhere defined, it retains its common meaning. Sales for immediate consumption are so obviously retail sales that we waste no ink to belabor that point. In spite of the subtleties of appellant's contentions, therefore, retail dispensers' beverage licenses are "licenses to sell malt or brewed bevrages at retail" to which the Quota Law applies.

Appellant has a variation on the above chain of reasoning, namely, that if clubs are "retail dispensers", then since that term is not mentioned in the Quota Act, retail dispensers' licenses are not forbidden by the Quota Act but only "licenses . . . for the retail sale of malt or brewed beverages". To state the proposition is to demonstrate its absurdity in carrying the argument of defined terms to the absurd conclusion that a retail dispenser's license for the sale of malt or brewed beverages is not a license for the retail sale of malt or brewed beverages.

Other arguments advanced for exclusion of clubs from the operation of the Quota Act are, as we understand them, that (1) the Quota Act speaks of transfers, whereas clubs may not transfer; (2) the differences between clubs and other licensees; (3) the absence of a reason for applying a quota to clubs.

It must be remembered that the Quota Act was a locking of the barn door after the horse was stolen. The evil of a superfluity of licenses should have been anticipated but was not until the legislature was finally confronted with a situation demanding attention, complicated by the fact that many licensees already had a large investment in licensed premises. We do not question either the wisdom or the charity of the legislature in seeking to recognize a quasi property right in a license and in permitting present licensees to continue in business or to realize upon their investment by transferring their licenses. Such a compromise always involves unavoidable inconsistencies and a modicum of prejudice. We cannot argue from the fact that any individual licensee may, under the Quota Act, transfer his license while a club restricted by other acts may not, that clubs were not intended to be included in the Quota Act. It is a more reasonable deduction that that problem never occurred to the minds of

the legislators. Nor is it significant if the Liquor Control Board should continue to transform club liquor to club catering licenses, but refuses to transform club beverage to club liquor licenses. Their interpretation of the act is not binding upon us in any event and, if it were worth the effort, we could point out a valid distinction to justify their attitude.

We do not consider the differences between clubs and other licensees significant so far as the Quota Act is concerned. The main differences are: (1) That clubs may remain open for longer hours and may sell on Sundays (47 PS §100f II to XXXIII) ; (2) that they may not sell for off premises consumption (47 PS §100e) ; (3) that they may sell only to members (47 PS §100e) ; (4) that they may sell on credit (47 PS §100f V) ; (5) that they pay a greatly reduced license fee (47 PS §100b(e)) ; (6) that they need no amusement permit (47 PS §100f XII). In considering the effect of these differences, we must remember that the general principle of our liquor laws is to prohibit sales while the particular items in those laws define the sole conditions on which such sales, when permitted, may be made: Commonwealth v. Williams, 133 Pa. Superior Ct. 104, 107; Commonwealth v. Bienkowski, 137 Pa. Superior Ct. 474, 479. The granting of certain privileges to certain licensees and the imposition of restrictions on others does not alter the fact that all licensees sell liquor or malt or brewed beverages and that if they make sales for immediate consumption upon the premises, that is necessarily, by every common and accepted use of the term, as well as by its use in our liquor laws, a sale at retail.

The appeal to reason compels us to take a realistic view of clubs. The legislature, by according them special privileges has shown proper regard for the respectability of our bona fide clubs; by hedging those privileges with restrictions, it has indicated that there

is no magic in the word "club", that the character of a club is determined by the character of its officers and that the officers of clubs are only human, subject to the failings of frail mortals. To say that there is no possibility of some bona fide clubs abusing their license privileges under stress of competition and to say that there is no such thing as competition between various clubs and between clubs and other licensees is contrary to common experience. There is a definite relationship between the number of all licenses and the temptation to laxity in the manner of conducting some clubs. That this particular club as well as the majority of other clubs could be trusted to obey the law under any circumstances is beside the point in deciding the question of law here involved.

In deciding this case we have leaned heavily upon our former opinions in Ontario Tribes License 42 D. & C. 200, Good Will Fire Company Appeal, 20 Lehigh 178, and Appeal of Coplay Post, American Legion, 22 Lehigh 203, reviewing them in the light of appellant's brief. Because there is now a right of appeal, we feel that a lower court may no longer rely upon stare decisis in relation to its own decisions. Since this appeal is from a new refusal by the Liquor Control Board, our former decision in Good Will Fire Company Appeal, supra, does not render the case res adjudicata, despite the identity of parties and subject matter.

It is to be noted that the reference in the board's order to Bethlehem, Northampton County, is due to the board's classifying Bethlehem in Northampton County, despite the fact that a large part of it, including 235 Vineyard Street, is in Lehigh County.

And now, September 26, 1949, the appeal of Good Will Fire Company of Bethlehem from the order of the Pennsylvania Liquor Control Board dated August 24, 1949, refusing it a club retail dispenser's license

for its premises 235 Vineyard Street in the City of Bethlehem, Lehigh County, is dismissed at appellant's costs.