## J. W. CREEL *et al. v.* STATE.

(Division B. Oct. 30, 1939. Suggestion of Error Overruled Nov. 13, 1939.)

[191 So. 814. No. 33805.]

Earle L. Wingo, of Hattiesburg, for appellants.

740

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**McGowen, J.,** delivered the opinion of the court.

On a joint indictment for manslaughter, the appellants, J. W. Creel, Albert Creel, and George Creel were convicted of manslaughter and sentenced to serve a term in the State Penitentiary.

Bill Dean was also jointly indicted with the Creels, but the Court gave a peremptory instruction in his behalf, and he was discharged. The Creels prosecute an appeal from their conviction to this Court.

On behalf of the state the following instructions were given:

"The court charges the jury that if you believe from the evidence in this case, beyond a reasonable doubt; that Albert Creel, George Creel and J. W. Creel, or any or either of them made an unprovoked attack upon a policeman of the City of Hattiesburg while in the discharge of his official duties upon a crowded street in said city and attempted to take from him his pistol, and that such an act on their part was an act committed in utter disregard of the rights of other people upon the streets and showing on their part a wanton disregard of

the lives and rights of others, and that as a result of such acts the gun was discharged at a time when said unlawful assault was being made upon the policeman and at a time when the said Albert Creel, George Creel and J. W. Creel or either of them was trying to take the gun away from said policeman, and that one Homer Quick, a human being, *was killed as a direct result of the discharge of said gun,* then it is your sworn duty to find the defendants guilty as charged, or to find such of them guilty as charged, as you believe beyond a reasonable doubt took part in the acts above described.

"The court instructs the jury that if you believe beyond a reasonable doubt from the evidence in this case, that Hawkins, a police officer in the City of Hattiesburg, while in and about the discharge of his official duties, approached Albert Creel for the purpose of speaking to him at a time when Albert Creel was causing a disturbance in violation of the law on the streets of the City of Hattiesburg, and with the intention then and there to arrest the said Creel, if necessary, and that the said Albert Creel then and there struck the said Hawkins with the jaws of a pocket-knife, not in necessary self-defense, and thereupon tried to take the pistol of the said policeman away from him, and that in such attempt the said Albert Creel was aided and assisted by George Creel and J. W. Creel, and that after said attack upon the policeman, and during the time when they were trying to take from him his said pistol, the pistol was discharged as a result of the attack made by the three men on the policeman, and that the discharge of the gun killed Homer Quick, a human being, then you will find the defendants, and each of them, guilty as charged of manslaughter."

On behalf of the appellants, the following instructions were given:

"The court instructs the jury for the defendants that in order to convict any one, or all of the defendants you must believe beyond every reasonable doubt and to a moral certainty that one, or more, or all of the defend-

ants actually put in force the agency that caused the death of the deceased, and unless you so believe from the evidence that any one or more of the defendants did actually put in force the agency that killed the deceased, then you should return a verdict of not guilty as to each and all the defendants whom you should find from the evidence, if you should so find from all the evidence, did not put in force the agency that killed the deceased.

''The court instructs the jury for the defendants that if from all the evidence in this case you believe that the policeman Hawkins fired the gun, that is to say pulled the trigger that fired the gun, that killed the deceased, at a time when the defendants nor any one of the defendants had their hand or hands on the gun nor did any one or all the defendants have their hand or hands over witness Hawkins' hand and squeeze or press said witness Hawkins' hand in such a manner as to actually cause the trigger to be pulled and the gun to be fired, if you so believe from all the evidence, then it is your duty to find any one or all the defendants not guilty.''

The above instructions given to the jury by the court fairly delineate the facts of the killing from the standpoint of the State and the defendants; therefore we will not undertake to analyze the evidence of the many witnesses introduced on the trial.

On the Saturday night before Easter, about eight-thirty, Hawkins, a policeman of the said City of Hattiesburg, was actively engaged in the performance of his duties, being assigned on a street or streets which were crowded with pedestrians, and his attention was called to some disturbance being created in the Cafe. He found there the Creels, and as he was of the opinion that they were drinking, he courteously requested them to go home. The Creels left the Cafe, went off a few feet, and there engaged in boisterous conduct. The officer then approached Albert, who he thought was drunk, and courteously again requested him to go home and reminded him that he had been arrested by him and incarcerated

in jail on former occasions. Thereupon Albert Creel struck the policeman with a closed knife, cutting a gash above his eye, and the other two Creels actively participated in striking Hawkins on the body or on the head. By the first blow he was knocked down prone on the sidewalk. As he arose one of the Creels grasped him from behind and was undertaking to remove his pistol from the holster, when Hawkins caught the pistol in his hand and was withdrawing it. As he did this, Albert Creel grasped his hand and somehow in the scuffle, with all the appellants striking Hawkins, the pistol was discharged three, four, or five times, one of the bullets wounding a little negro, and another wounding Homer Quick, who thereafter died as a result of the wound. According to the State's version, the policeman was ganged and severely beaten when bystanders interfered, and two of the Creels were pulled from his prone body still attacking him. Hawkins was strongly supported by other eye witnesses.

The defendant, Albert Creel, who said he only engaged in the assault and battery, testified that the policeman was the aggressor by striking him first with a flashlight, Albert then knocked Hawkins down, and then at a time when neither he nor anyone else was holding him, the policeman came up with a pistol in his hand and discharged one bullet in the sidewalk and the other out presumably toward the crowd. His testimony was supported by other witnesses in a measure. We think it is practically without dispute that there were numerous people on the street very close to the scene of this difficulty. The theory of the state was that in the scuffle for the pistol that either the hand of Albert Creel or Hawkins pressed the trigger that discharged the pistol. It was an automatic, forty-five Colt. On the trial, the state offered six persons who claim to be eye witnesses; the defendant offered eight, including himself.

The appellants assign as error the refusal of the Court to grant to each one of them a peremptory instruction.

The jury adopted the theory of the State that the Creels were the aggressors in the fight; and on the conflict of the evidence, that question was solely for the jury.

Appellants, however, further urge, as we understand their brief, that even on the theory of the State, the appellants were only engaged in the commission of a misdemeanor—assault and battery—and that this misdemeanor was merely malum prohibitum, and that there was no direct connection between the misdemeanor so committed and the slaying of Quick, relying strongly upon the case of Dixon v. State, 104 Miss. 410, 61 So. 423, 424, 45 L. R. A., N. S., 219. In that case Jim Dixon was drunk in a public place, was carrying a concealed weapon in violation of the law, and was shooting on the public highway. He fired his pistol upon or in the highway, the bullet struck a tin can, glanced, and killed a young lady. The court therein instructed the jury in effect that if Dixon was guilty of any one or all of these misdemeanors he was guilty of the crime of manslaughter. The court further held that none of the misdemeanors there under review were malum in se, but were malum prohibitum, quoting from authority the following language: ''When a man, in the execution of one act, by misfortune, or chance, and not designedly, does another act, for which, if he had willfully committed it, he would be liable to be punished—in that case, if the act he was doing was lawful, or merely malum prohibitum, he shall not be punished for the act arising from misfortune or a chance; but if malum in se it is otherwise.'' The Court then cited with approval the case of State v. Horton, 139 N. C. 588, 51 S. E. 945, 1 L. R. A., N. S., 991, 111 Am. St. Rep. 818, 4 Ann. Cas. 797. In that case that Court very thoroughly reviewed cited, and quoted from the authorities as to the common law and the difference between malum in se and malum prohibitum in the matter of common law murder and manslaughter, which we will not undertake here again to review. We are of the opin-

ion that the case of Dixon v. State, supra, has no bearing upon the case at bar, except to emphasize the difference between the facts of the two cases.

In the case at bar according to this State's evidence, which we will take to be true, under our rule on a conflict of the evidence, the Creels made an unprovoked assault upon the policeman, in the courteous discharge of his duties, and immediately after having struck him a terrific blow as aggressors, they undertook to take from his person the pistol, which he, as an officer, had a right to carry. As an officer, Hawkins was under duty to retain his pistol in the discharge of his duties. A scuffle over the possession of the pistol ensued and the jury believed that the pistol was discharged while Creel, either Albert or the other, was holding Hawkins' hand and thereby the trigger was pulled, which resulted in the discharge of the pistol, causing the death of Quick. On this theory the jury was fully warranted in finding the appellants guilty of manslaughter. Under the circumstances detailed here, while the appellants were engaged in that misdemeanor, they were undertaking to deprive the officer of the law of his pistol, and scuffled with him in order so to do. They were engaged in an unlawful act, which was malum in se. 16 C. J., page 58, paragraph 8.

Some of the courts of this country hold that there is no reason for the distinction between misdemeanors, which are malum in se, and malum prohibitum, but our Court in the Dixon case, supra, aligned itself with the common law rule that misdemeanors, which are malum prohibitum on the charge of manslaughter, are not included. The Court did not err in refusing the peremptory instruction.

It is argued next that the instructions for the State were peremptory in nature. They were peremptory only in the particular that the Court held as a matter of law that an assault and battery was malum in se, and we have determined that this ruling was correct.

That part of the quoted instruction italicized by us,

"was killed as a direct result of the discharge of said gun," and so forth, might be subject to criticism, but when we consider the last instruction for the state quoted verbatim, supra, there was no chance for confusion as to what the Court meant by the use of the word "result" with that which precedes, including that which follows. There was no chance for the jury to be confused. It was fully explained what result was referred to there. If it could be said to be uncertain, it was fully explained in the appellants' instruction quoted. On the State's theory, Albert Creel at the beginning was utterly indifferent to consequences of engaging in a fight with a policeman at a time when he had at least been drinking. According to his own admission, he testified that "he wanted more" (liquor), or words to that effect, on a crowded street, which shows that he was utterly indifferent to the consequences of engaging in an attack upon an officer at law and engaging in a scuffle with him in the effort to take away his pistol. This shows such an utter indifference to consequences as to warrant the jury in finding him guilty of manslaughter, though the killing of Quick was involuntary. We find no reversible error herein.

Affirmed.